BACKUS *against* DUDLEY and others.

BACKUS and Wife *against* DUDLEY and others.

*June* 29.

Where a pauper of the town of *G.*, residing in the town of *S.*, was furnished, by the former town, with suitable accommodations therein, which he was solicited to return and accept; it was held, that *S.*, after notice, could not furnish him with support, at the expense of *G.*

But if this were otherwise, still *G.*, in such case, would have no right to remove the pauper, against his will, from *S.* to *G.* for support.

*Qu.* Whether in any case, a pauper residing in one town, can be forcibly removed to another, in which he has a settlement, unless by virtue of a legal warrant.

THESE were actions of trespass, for entering the dwelling-house of the Rev. *Simon Backus* at *Stratford*, and taking, and carrying away himself and wife, and certain articles of household furniture.

The causes were tried at *Fairfield, December* term, 1820, before *Chapman*, J.

As a justification of the charges made by the plaintiff, the defendants stated, and offered to prove, by competent testimony, the following facts. The plaintiff and his wife, residing in the town of *Stratford*, had their legal settlement in the town of *Guilford*, and had become poor and unable to support themselves, and had no relations, who, by law were liable for their support. Previous to the time of the alleged trespass, they had applied to the select-men of *Stratford* for relief; who expended considerable sums of money in furnishing them with support; of which they gave notice to the select-men of *Guilford*, by whom such expenses were reimbursed. In the month of *August*, 1819, while the select-men of *Stratford* were expending further sums for the support of the plaintiff and his wife, the defendants, being select-men of the town of *Guilford*, provided a comfortable dwelling-house in *Guilford*, for the use of the plaintiff and his family, and immediately af-

terwards proceeded to *Stratford*, with two wagons, to remove the plaintiff and his wife to the place of residence provided for them. The defendants requested, and endeavoured to persuade, the plaintiff and his wife, to go with them to *Guilford*, and to carry with them their household furniture ; assuring them, that they should be provided, at the expense of that town, with every thing necessary to make them comfortable and happy. With this request they utterly refused to comply, declaring, that they had a right to live where they pleased, and that *Guilford* was obliged to support them. The defendants returned, without being able to accomplish their object ; and the plaintiff, with his family, continued in the town of *Stratford*, at a great and unnecessary expense to the town of *Guilford*. In the month of *October*, 1819, the defendants were informed, by the select-men of *Stratford*, that the plaintiff and his family still continued chargeable, and that the expense of their support would increase. The defendants then engaged a comfortable packet, with which they proceeded to *Stratford*, to remove the plaintiff, and his family, and furniture, to *Guilford*. But the plaintiff and his wife, on application made to them, by the defendants, and assurances given, that they should be kindly treated, and provided with all things necessary for their comfort, and should be permitted to occupy the house provided for them, utterly refused to go with the defendants, claiming that they had a right to live where they pleased, at the expense of *Guilford*. The defendants remained in *Stratford*, two or three days, endeavouring, by the use of all reasonable and proper means, and by repeated applications, and assurances of kind treatment, to induce the plaintiff and his wife to comply with their request, but they persisted in their refusal ; and thereupon they gently raised the latch of the door, and entered the plaintiff's dwelling-house, and moderately laying their hands on the plaintiff and his wife, gently removed them, with the articles of furniture mentioned in the declaration, on board the vessel in readiness for them, and transported them to *Guilford*, making use of no more force than was necessary.

To the admission of these facts in evidence, the plaintiff objected, on the ground that the select-men of *Guilford* had by law no right to remove him, and his family, and furniture, to that town. The judge thereupon excluded the evidence, on the ground claimed by the plaintiff, as a *justification* of the

*Fairfield,*
*June,*
*1821.*

*Backus*
*v.*
*Dudley.*

defendants ; but admitted it, *in mitigation of damages.* The issue in each cause, being found for the plaintiff, the defendants moved for a new trial, on the ground that the decision of the judge excluding the evidence offered by them, as a justification, was erroneous.

*N. Smith* and *Bissell*, in support of the motion, contended,

1. That as Mr. *Backus* and his wife were destitute, and needed relief, it was the duty of the select-men of *Stratford*, where they resided, to furnish them immediately with necessary supplies. This duty is founded on principles of humanity and religion, and is expressly enjoined, under the sanction of a penalty, by the act of *May*, 1818. *c.* 4. *s.* 2. 3. (*a*)

2. That as these paupers had a legal settlement in *Guilford*, it was the duty of that town, after notice, to reimburse the expenses to which *Stratford* had been, or should be, subjected, for their support. 1 *Stat. Conn. tit.* 91. *s.* 11. *tit.* 130. *s.* 1.

3. That wherever one person, or class of persons, is bound to take care of, provide for and support another, the former is entitled by law to the custody of the latter. Thus, a parent is entitled to the custody of his child ; a master, of his servant ; a husband, of his wife, &c. This right is to be exercised in a reasonable and proper manner. The law is vigilant in guarding against its abuse. But if the defendants had the right, no abuse of it will be imputed to them.

The right of *Guilford* to *call* these paupers home, results, also, from the corresponding right of *Stratford* to *send* them home. 1 *Stat. Conn. tit.* 91. *s.* 4. The legislature probably deemed an express declaration of the right of a town to recal its own paupers, for the purpose of support, as superfluous.

4. That as this right is founded on the *relation* subsisting between the parties, these consequences are inevitable : first, that the right is *transitory*, and may be exercised wherever the relation subsists ; and secondly, that a warrant from a magistrate is unnecessary.

(*a*) The section referred to is in these words : " That it shall be the duty of the select-men of the several towns in this state, whenever any person not an inhabitant of such town, shall become poor, and unable to provide for him or herself, to furnish for such person immediate and necessary support ; and give information to the town to which such person belongs, if known, as soon as may be." The third section of the same act inflicts a penalty on select-men guilty of a breach of the duty enjoined.

*Daggett* and *Sherman*, contra, contended, 1. That when the select-men of the town of *Stratford*, finding these indigent persons within their limits, had furnished them "immediate and necessary support," and had given notice thereof to *Guilford*, the town to which they belonged ; nothing further could be legally required from *Stratford*; and if that town made *subsequent* disbursements, it was a mere *voluntary* act, on their part, with which *Guilford* had no concern.

2. That whether *Guilford* was liable or not, for the expenses incurred by *Stratford*, the select-men of the former town had no right to restrain the personal liberty of the plaintiff and his wife. In the first place, these select-men had, by virtue of their office, no power whatever, without the limits of their own town. To those limits the exercise of their official duties is confined. But, aside from this difficulty, could they forcibly remove these persons ? A citizen of the state, by becoming poor, and receiving support from some public fund, whether of a town, or of the state, or of a charitable society,—is not degraded, disfranchised, or deprived of any of his personal rights. A town pauper, in this respect, stands on the same footing as a charity scholar of a college. But, it is asked, does the law impose upon towns the duty of sending supplies to their paupers, or of paying for their support, wherever they may choose to reside ? No : if a town makes suitable provision for one of its paupers within its own limits, and invites him to accept of it ; that town has discharged its duty. If the pauper chooses to starve, of which there will be, ordinarily, little danger, it will be his own fault. The act of *May*, 1820. *c.* 38. conferred a power, which did not exist before.

3. That if the right of removal existed, still it could not be exercised without warrant. An arrest without warrant is repugnant to the principles of civil liberty, as recognized by the common law of *England*, in *Magna Charta*, in our old *Bill of Rights*, in the constitution of this state, and of the *United States*, and in the constitutions of all our sister states. It has been the beginning of every encroachment upon the liberty of the subject. Can you ascertain a man to be a pauper of your town, by *inspection* merely ? Can you take *any man*, without special authority, and even without enquiry, and remove him, and confine him, and leave him to litigate the

*Fairfield,*
*June,*
*1821.*

Backus
*v.*
Dudley.

question of fact, whether he is your pauper, when he can get an opportunity ?

Hosmer, Ch. J.    Testimony was offered, by the defendants, to prove, that the plaintiff was an inhabitant of *Guilford,* unable to support and provide for himself, whose necessities had been supplied, and continued to be supplied, by *Stratford ;* of which, the latter town had given notice to *Guilford,* pursuant to the statute ; (*vol.* 2. *p.* 302.) and thereupon, that the defendants, the select-men of *Guilford,* against the prohibition of the plaintiff, took him, and his family, and household furniture, and with the least possible force, removed them to the town last-mentioned, with the view of furnishing the paupers necessary support.    The court admitted the evidence, not as a justification, but in mitigation of damages only ; and whether this decision was correct, is the question before the court.    For the defendants, it has been insisted, that *Stratford* had right, and was under the obligation of law, after having given the above notice to *Guilford,* to supply the plaintiff's necessities, at the expense of *Guilford ;* and to avoid this inconvenience, that the latter town was legally empowered to remove the plaintiff, with his family and furniture.

The case presents the following questions : 1st, Whether after notice, *Stratford* was authorized to support the plaintiff, at the expense of *Guilford.* 2dly, Whether, if thus authorized, *Guilford* had a legal right to remove the plaintiff and his furniture, in order to rescue themselves from the extraordinary expenses, they otherwise must incur.    And, 3dly, Whether the plaintiff was removeable, unless by virtue of a legal warrant.

1. The laws relating to the support of paupers should receive a liberal construction, for the benefit of the poor, and of the town, which is obliged to give them support.    The several towns in the state are, by statute, holden, to maintain their respective inhabitants wherever they may reside, " if *they need relief ;*" (*tit.* 91. *s.* 11.) but a person whose bodily indisposition presents no obstacle to his being removed, and whose removal is solicited and provided for, by the town liable to his support, *does not need relief,* within the fair intendment of the act.    It was no part of the legislative intent, to indulge the whims or passion of men, or to provide for those, whose necessities were voluntary and deliberately chosen.    Whether prompted by resentment. choice, or any other motive, a

pauper ought not to possess the power, of creating a factitious necessity, and thus, of imposing a heavy burden on the town, of which he is an inhabitant.    This construction places no burden upon the town, in which the pauper actually resides ; as he has no necessities, which they are under obligation to relieve.    When they have given legal notice to the town liable for his support, which they are bound to do " as soon as may be," (*vol.* 2. *p.* 302.) and such town has applied to the pauper for his removal, the town thus giving notice, has run out the full line of its duty, and no *further relief* to the pauper, is required at their hands.    Under the above circumstances, the relief rendered is merely voluntary, and no action lies for reimbursement.

*Fairfield,*<br>June,<br>1821.<br><br>Backus<br>*v.*<br>Dudley.

2. If *Stratford* were authorized to maintain the pauper, at the expense of *Guilford,* the latter town had no right to remove him.    It was no legal consequence, before the statute of *May,* 1820, that he, who was bound by law to support a person, had a right to restrain his locomotion, and place him where his support would be most cheap and convenient.    There was no statute giving sanction to the position, and the common law affords it no countenance.    In support of this doctrine, no principle or case has been cited ; nor does my recollection furnish any.    The argument, derived from the relation of father and son, and the consequent liabilities of the former, misconceives the right of the parent ; and if well founded, has no analogy to the present case.    Bound, as the father is, to support his adult son, when under necessity, he has no such right to remove him, as has been contended for ; and even over his minor children, his right of controul results from the duties of protection and education, and not from his obligation to render them support.    The act of *May,* 1820, (*p.* 425.) before alluded to, which authorizes the removal of a pauper, by warrant of a magistrate, from the town where he is chargeable, to the place of his settlement, implies a strong negative, against the antecedent existence of a similar power.

3. Whether the removal, had it been authorized, must have been by legal warrant, it is unnecessary to determine. The decision of the superior court was entirely unobjectionable, on the grounds already discussed ; and, for this reason, I waive the consideration of the proposed question.

PETERS and CHAPMAN, Js. were of the same opinion.

*Fairfield,*
*June,*
*1821.*

*Backus*
*v.*
*Dudley.*

BRAINARD, J.  The facts stated in the motion present a question of *right.*

That the plaintiff and his wife were residing in the town of *Stratford,* where they had become chargeable, and by means of poverty, were unable to support themselves ; that the town of *Stratford* had expended considerable sums in providing their support, of which the select-men of *Stratford* notified the select-men of *Guilford,* and requested payment ; and that the expenses thus incurred, were paid ; are facts in the case. It also appears, that the plaintiff and his wife, by legal settlement, belonged to *Guilford ;* that while they yet remained in *Stratford,* thus chargeable, the defendants, after inviting and soliciting them to suffer themselves to be removed from *Stratford* to *Guilford,* by some suitable and convenient mode of conveyance, on their refusal, proceeded to remove them, and for that purpose used as much force—and no more—as was necessary to accomplish the object. Had the select-men of *Guilford* a right thus to effect the removal of the plaintiff and his wife ?

If it was the duty of the select-men of *Stratford* to cause the removal ; or if, on refusal of the town of *Guilford* to pay the expense incurred in the support of the plaintiff and his wife, no recovery could be had against *Guilford ;* or if the select-men of *Stratford* have right to withhold support ; or if the select-men of *Guilford* could be justified in suffering the plaintiff and his wife to remain in *Stratford,* there to perish for lack of food ; then, indeed, I should say, that the defendants had no right to interfere, and they must be adjudged trespassers. But whatever the law might have been previously, the statute of *May,* 1818, makes it " the duty of the select-men of the several towns in this state, whenever any person not an inhabitant of such town shall become poor, and unable to support and provide for him or herself, to furnish for such person immediate and necessary support." And the town to which such poor person belongs, on reasonable notice, is bound to pay all reasonable expenses. This statute settles two points : First, that the plaintiff and his wife, being in *Stratford,* and unable to provide for themselves, it was the duty of the select-men of that town to afford them immediate and necessary support. Secondly, that on proper notice, it was the duty of the town of *Guilford* to pay all reasonable expenses. Of course, I hold, that the select-men of

*Guilford*, as the proper and authorized agents of the town, had a right, in a reasonable and proper manner, to remove the plaintiff, and his family and furniture, from *Stratford* to a reasonable and proper place.

The duty of furnishing support requires a reasonable subordination: they must be reciprocal. Where one person is bound to support another, there must be a corresponding subjection; an obedience answerable to the object.

The town of *Guilford* could not be obliged to support those poor, but respectable persons, in the town of *Stratford*; and the select-men of *Guilford* could not suffer them to perish with cold and hunger, in the streets of *Stratford*. They must see them supported; and it appears to me to follow, that they had a right to say where this support should be afforded. This right ought, on all occasions, to be exercised with all possible delicacy; with all kindness, consistent with a faithful discharge of the duty imposed. I would have the unfortunate subjects of this duty of support deprived of no right or privilege, civil or religious. Is he an elector of the state? Let him attend electors' meetings, and exercise his franchise. Is he a *Presbyterian*, or an *Episcopalian*, or a *Baptist*, or a *Methodist?* Let him associate for public and religious worship with those of his own denomination. But when he comes to ask for, or needs, support; when he asks for, or needs, house and home, food and raiment; let those bound to support have a voice in determining where that support shall be afforded. And on this subject—*the place where*—I would be liberal. An alms-house of a town may be a very proper place for most of its subjects of support; but, however well regulated, it may not be for all. On this point, I think, from the motion, the defendants must stand acquitted. The place provided was not the alms-house, but a house suited for the accommodation of a private family.

The case under consideration, I think, compares in principle with a case I will suppose. Slavery, or perpetual servitude, was once, not only tolerated, but impliedly sanctioned, by statute, in *Connecticut*. In such a state of things, suppose a man should emancipate a servant, in such way as that neither he nor his heirs could ever reclaim his services, but would still be liable for his support, should he come to want; and suppose he should become unable to support himself, and become chargeable in another town; and the duty of his sup-

*Fairfield,*
*June,*
*1821.*

Backus
*v.*
Dudley.

port should devolve on the son of his former master ; would not the latter have a right, in a kind and tender manner, to remove this emancipated servant (if I may be allowed the expression) to his own home, for the purpose of affording him there, a suitable support ?   It seems to me, that he would. Still I would not have this emancipated servant deprived of any right or privilege, civil or religious, natural or acquired, the enjoyment of which would be consistent with the right of his provider and protector reasonably to say where the support should be afforded.

I am, therefore, of opinion, that the testimony adduced by the defendants, ought to have been admitted to the point of justification.

BRISTOL, J. was of the same opinion.

New trial not to be granted.