PATRICK H. CONDON ET AL., SELECTMEN, *vs.* RUANA E. POMROY-GRACE.

First Judicial District, Hartford, March Term, 1901.
ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

Chapter 88 of the Public Acts of 1893 provides that if children who are able to support their indigent parents " neglect" to do so, the Superior Court may require them to contribute for that purpose such sum as may be reasonable and necessary. In an action upon this statute against a daughter to compel her to contribute to the support of her indigent mother who resided in the plaintiff town, it appeared that the defendant was willing and had offered to provide for her mother at her own home in another town, that such home was suitable so far as the mother's physical comfort and material surroundings were concerned, but that the defendant had treated her mother, while an inmate of her home, with such unkindness and neglect that she could not remain there, and that it would be cruel to force her to do so. *Held :* —

1. That under these circumstances it could not be said as matter of law that the trial court erred in ruling that the defendant had neglected and refused to provide the support contemplated by the statute.

2. That the court might properly require the contribution to be made for the mother's support in the town of her residence and settlement.

3. That the proceeding was a civil action and the successful party was entitled to costs.

The statute does not convert the moral obligation to support into an absolute legal duty, until the court has found the necessity for aid, the ability to aid, and has prescribed to what extent the aid shall be furnished.

The mere imposition of a statutory duty to support an adult does not give the party bound the right to determine the place where such support shall be furnished.

No valid exception can be taken to a finding merely because the trial court based it upon the testimony of one witness in opposition to that of three others who testified to the contrary.

Argued March 6th—decided April 2d, 1901.

ACTION to compel the defendant to contribute a reasonable sum to the support of her mother, brought to the Superior Court in Hartford County and tried to the court, *Robinson, J.;* facts found and judgment rendered for the plaintiffs, and appeal by the defendant for alleged errors in the rulings and findings of the court. *No error.*

The plaintiffs also appealed for the refusal of the court to allow them costs. *Error.*

This action was brought by the selectmen of the town of Bristol, under § 3318 of the General Statutes as amended by Chap. 88 of the Public Acts of 1893.

The allegations of the complaint are: "1. Mrs. Ruana E. Baldwin of said Bristol is poor and unable to support herself, and is being supported by the town of Bristol. 2. The defendant is the daughter of said Ruana E. Baldwin. 3. The defendant is able to provide support for her said mother. 4. Ever since the first day of April, 1899, she has refused and neglected to provide such support." The relief claimed is "an order upon the defendant to contribute to such support, from the date hereof, such sum as the court may find to be reasonable and necessary."

The answer denied paragraphs 1 and 4, and admitted paragraphs 2 and 3. It also stated a second defense, alleging that the defendant had continuously offered to support Mrs. Baldwin at her house in Hartford, but that the selectmen

insisted that such support should be furnished directly to the town in the form of cash payments.

The reply denied the allegations of the second defense, and in avoidance of that defense alleged that Mrs. Baldwin had tried to live with defendant at her house, but had been treated with such unkindness and neglect that she was not able to remain, and that the defendant's house was not a suitable home for Mrs. Baldwin.

The substantial issues of fact tried by the court were raised by the defendant's denial of paragraphs 1 and 4 of the complaint, and by the defendant's denial of the matter in avoidance of the second defense alleged by the plaintiffs in their reply.

After judgment for the plaintiffs, the court (*Robinson, J.*), upon request of defendant, made a special finding. A motion to correct this finding was denied, and exception taken.

The errors assigned in the defendant's appeal are: "1. The court does not find that the defendant has neglected to provide support for Mrs. Baldwin, and the facts found do not constitute such neglect as is contemplated by the statute. 2. The court, while finding preliminarily that the defendant's house was a suitable and satisfactory home for Mrs. Baldwin in so far as her physical comfort and material surroundings were concerned, errs in its final conclusion that the house of the defendant was not a proper or suitable home for Mrs. Baldwin to which the plaintiffs should compel her to go. 3. The court does not find Mrs. Baldwin to be a poor person, nor was she such in fact." The appeal was afterwards amended by adding a claim of error in denying the defendant's motion to correct the finding by striking out the paragraphs relating to the defendant's treatment of her mother, which motion was made on the ground that the facts as found by the court, while supported by the testimony of one witness, were denied by that of three; and also that the court had found one fact without any evidence.

The plaintiffs' appeal assigns as the only error, the refusal of the court to give judgment for costs to the plaintiffs.

*J. Gilbert Calhoun* and *Edward J. Garvan*, for the appellant (defendant).

*Epaphroditus Peck*, for the appellees (plaintiffs).

HAMERSLEY, J. The defendant's appeal discloses no error. The judgment of the trial court found all the issues of fact in favor of the plaintiffs. The conclusions of the judgment are consistent with the subordinate facts found. The claim of inconsistency, in the only particulars suggested in the reasons of appeal, has no merit. These conclusions cannot therefore be reviewed, unless they involve some erroneous view of the law.

The assignment of errors in law lacks that clearness and distinctness which is strictly requisite. Treating the errors discussed in argument as sufficiently specified, they all depend upon the soundness of this proposition: As a matter of law the court cannot order the defendant to contribute the sum of $12.50 per month towards the support of her mother, so long as the defendant expresses her willingness to support her mother in the defendant's home, which is suitable and satisfactory so far as her mother's physical comfort and material surroundings are concerned; and this is true, notwithstanding the fact that by reason of the defendant's harsh treatment of her mother while an inmate of the defendant's house and subsequently, that home has become so hateful to the mother that any attempt to keep her there by compulsion would be exceedingly cruel to her.

This proposition is not sound. While the willingness of a daughter to provide for her mother in the daughter's home may affect the determination of her neglect, within the meaning of the statute, it is only one element, and not conclusive. The Superior Court has found the fact of neglect in view of all the evidence, and that finding must stand unless the court erred in refusing to consider, as decisive of the question, an offer by the daughter of a comfortable bed and sufficient food, coupled with such harsh treatment from the daughter as justly compelled its refusal. The law does not force a

parent to become the unhappy prisoner of a thankless child, as the only alternative of starvation. A house, however comfortable and luxurious as to its material appointments, where one is subjected to treatment which renders life unendurable, is not a suitable home, even for an aged pauper.

As to the defendant's claim that the facts found do not support the conclusion of the court in reference to the daughter's conduct, we think they are too plainly sufficient to justify discussion; indeed, it would seem difficult for an impartial mind to reach a different conclusion, in view of facts appearing in the record as admitted by the daughter.

If we rightly apprehend the underlying logic of the considerations urged by defendant's counsel, they depend upon a misapprehension of the statute under which this action is brought, and especially upon the claim that the statute imposes upon the daughter an absolute legal duty to support her mother, and that such a statutory duty carries with it a right to determine the place where the support shall be furnished. It is not true that the mere imposition of a statutory obligation to support an adult clothes the party bound with such power over the person of the one supported. That power has in some instances been given by statute, but it cannot be inferred from the mere creation of the obligation. *Backus* v. *Dudley*, 3 Conn. 568, 573. The opinion in the case cited applies this principle to the obligation of a father to support an adult son. But the statute does not impose such absolute legal duty; its enactment did not change the moral obligation of a parent to support an adult child, or that of the child to support its parent, into an absolute legal obligation. The legal obligation created by the statute is coincident with the order which the court is authorized to make, and is not complete until the court has found the necessity for aid, the ability to aid, and prescribed to what extent the aid should be furnished.

In 1699 the selectmen were directed to make necessary provision for idiots and lunatics who were incapable of providing for themselves. 4 Col. Rec. p. 285. In 1715 an addition to this Act provided that the relatives (within the degrees

named) of "such poor, impotent persons," being of sufficient ability, "shall relieve such poor persons in such manner as the County Court in that county where such sufficient persons dwell, shall assess." 5 Col. Rec. 503. In the Revision of 1750 (p. 90 of the Edition of 1754) the language used definitely includes within the scope of the Act all persons who by age, sickness, or otherwise, shall become poor and impotent and unable to support themselves; and the Act provides that such poor persons shall be supported by their relatives who stand in the line of father, etc., if they are of sufficient ability, "which sufficient relations shall provide such support, and maintenance, in such manner, and proportion as the County Court in that county where such idiot, distracted, poor, or impotent person dwells, shall judge just and reasonable; whether such sufficient relations dwell in the same, or any other county. And the said courts are hereby fully authorized and impowered, upon application to them made, either by the selectmen of the town, or any one or more of such relations, to order the same accordingly." It is to be noted that from the first enactment of this Act to the present day, no authority has been given to any court to enforce in any manner the moral obligation of a child to support its parent, except through an order of court made in pursuance of this Act, defining the support to be furnished. The Act as thus settled appears substantially in the same form in the Compilation of 1808, p. 382, and its meaning and legal effect, so far as the nature and extent of the legal obligation created and the power of the County Court (now of the Superior Court) over the subject-matter are concerned, has been fixed by the decisions of this court. In *Waterbury* v. *Hurlburt*, 1 Root, 60 (1773), it was held that by the common law there is no legal duty resting on a son to support a parent, "and by the statute, only *sub modo*, viz, by a particular application to the County Court." In the case of *Wethersfield* v. *Montague*, 3 Conn. 507, 512, there was an application to the County Court under this statute, and we held that the moral duty of a child to support a parent did not involve a legal liability, and that the statute created such liability only in cases within

its terms, and that any legal liability created by the statute was, at most, potential and prospective, to be enforced when, and not until, the court had, upon the prescribed application, found "not only the ability of the relations to support, but the manner and proportion in which they are to contribute." *Newtown* v. *Danbury*, 3 Conn. 553, 559; *Cook* v. *Bradley*, 7 id. 57, 62; *Stone* v. *Stone*, 32 id. 143.

The statute thus construed was subsequently transferred from the title of "Idiots" to that of "Paupers." It has from time to time been added to as to some details. In the course of successive revisions its language has been condensed and modernized. The same peculiar remedy has been authorized for enforcing the different obligations of a husband upon an application made by the wife, and in respect to the scope of this extension we have recently said that the "statute is a remedial one, and to be liberally construed." *Cunningham* v. *Cunningham*, 72 Conn. 157, 159. But the essential features of the Act as affecting the legal liability of a child to support a parent, and the conditions under which that liability can arise and be enforced, have not been altered. The meaning of the Act in these respects, as settled in the early cases cited, has never been questioned during the intervening eighty years.

We therefore deem it clear that the court, having properly found that Mrs. Baldwin has become poor and unable to support herself, and that her daughter, being able, neglects to provide such support, was empowered by the statute to order the defendant to contribute any sum reasonably necessary for her mother's support in the town of her residence and settlement, and also clear that the neglect to provide support, within the meaning of the statute, may be established by proof that for six months preceding the application, the defendant refused and still refuses to provide any support whatever, unless Mrs. Baldwin will leave her place of residence, move to another town and become an inmate of the defendant's house, where she had been so treated by the defendant that to compel her to return would be exceedingly cruel.

As to the exceptions taken to the finding: The one which excepts to the finding of certain facts because the trial court believed one witness and did not believe others, is unjustifiable; the other, which excepts to the finding of a certain fact because there was no evidence offered on the question, is unsupported by the testimony certified.

The error assigned in the plaintiffs' appeal is well taken. The trial court correctly held that the right to costs in all cases at law, if it exists, rests on the provisions of some statute, or some rule of court authorized by statute. *Studwell* v. *Cooke*, 38 Conn. 549, 554. But the right to costs in any civil action is clearly recognized by statute. General Statutes, §§ 990, 3720. The words "civil action" as used in these sections, are broad enough to cover this proceeding. *Pettis* v. *Pomfret*, 28 Conn. 566, 570. We think the statute entitles the plaintiffs to costs, and therefore the refusal of the court to give judgment for costs, on the sole ground that the law did not permit any recovery of costs in such an action, was error.

There is no error in the defendant's appeal. On the plaintiffs' appeal there is error, and the cause is remanded that the judgment rendered may be perfected in accordance with the opinion.

In this opinion the other judges concurred.