A. J. GRANTHAM, on behalf of himself

*Employee-Claimant and Appellant,*

vs.

THE UNION PACIFIC COAL CO.,

*Employer-Defendant and Respondent.*

(No. 2512; December 26, 1951; 239 Pac. (2d) 220)

For the claimant and appellant the cause was submitted upon the brief of Albert E. Nelson and Kenneth G. Hamm, both of Rock Springs, Wyoming.

For defendant and respondent the cause was submitted upon the brief of Edwin V. Magagna and Joseph Galicich, both of Rock Springs, Wyoming.

OPINION

RINER, Justice.

This case arose under the Workmen's Compensation

Laws of this State. The history of the case prior to trial appears to be substantially as follows. The claimant, A. J. Grantham, usually hereinafter so designated was in the employment of the Union Pacific Coal Co., as a coal miner and had been such since September 1947. He worked' in a mine of the Company located at Winton, Wyoming. He had a wife and two children aged 7 and 4 respectively as dependents. His first claim for an award under State Law was sworn to "as he verily believes" on November 14th, 1949, and states in its description of the injury involved herein that: "On August 29, 1949, while four of us were carrying an iron pan up-hill I stepped on some loose coal and slipped and fell, injury: spine injury." It was also stated in said claim "that employee has sustained permanent partial disability to his spine but the extent is not known at this time, temporary total disability amount due $304.18". On December 2nd, 1949, the claimant verified positively and the personnel manager of the Coal Company, Harry M. Tibbs, "as he verily believes" the following stipulation:

"That under the terms of said Act, the injuries received and the compensation justly due to the injured workman are as follows, to-wit:

"Workman injured August 29, 1949, suffering injured back, and was disabled on account of his injuries from August 29, 1949, to and including October 31, 1949; that the injured workman and the employer stipulate that compensation be awarded at the rate of $145.00 per month (workman married—2 dependent children) for 2 days in August, 1949, ($9.35), for month of September, 1949, ($145.00), and for month of October, 1949, ($145.00), or TWO HUNDRED NINETY-NINE and 35/100 ($299.35) DOLLARS, amount due workman.

"It is further stipulated and agreed between the injured workman and the employer that the award entered on this stipulation shall be a final award and final judg-

ment for all temporary total disability and all permanent disability, but if the injured workman shall be entitled to additional compensation on account of said accident within two years after the date of the award or judgment hereon, the employer hereby agrees that it shall not be necessary for the injured workman to follow the usual and required procedure to reopen said case, it being sufficient that he file an application for such additional compensation within said two-year period, give notice thereof to the employer, and have the matter set for hearing as now provided by law.

"And the said injured workman hereby makes claim for the compensation justly due to him as aforesaid."

On December 7th 1949 the District Judge of Sweetwater County on account of said claimed injury described thus "Workman injured August 29, 1949, suffering injured back, and was disabled on account of his injuries from August 29, 1949, to and including October 31, 1949; compensation is due for 2 days in August 1949, for month of September, 1949, and for month of October, 1949," pursuant to said stipulation entered an order that said claimant, Grantham, "be and he is hereby awarded compensation for said injuries in the sum of TWO HUNDRED NINETY-NINE and 35/100 DOLLARS_____($299.35)_____that said award of compensation be paid from the State Industrial Accident Fund in the manner provided by law.

On May 22nd, 1950, claimant's attorney, therein described as the "County and Prosecuting Attorney of Sweetwater County" filed a motion to set the aforesaid claim for hearing. May 23, 1950, the judge assigned "said claim for compensation" for hearing in the courtroom in Green River, Sweetwater County, Wyoming, on June 21st, 1950 at 10:00 a.m. and that said employee and employer be notified as prescribed by law." On June 27th, 1950, claimant filed another "application and claim for award under the Workmen's Compensation

Law, State of Wyoming," similar to the first one filed, except that it is stated in this later claim:

"That as a direct result of injuries the employee has been incapacitated from performing any work at any gainfull occupation from the 1st day of November 1949, to the 26th day of June, 1950, (both dates inclusive) and that said employee has not fully recovered, and temporary total disability continues; temporary total disability claimed to and including June 26, 1950, amounts to $1140.67."

The trial of the matter was commenced evidently upon the agreement of employee and his employer represented by their respective counsel and agreeably to the presiding district judge on June 28th, 1950.

Keeping constantly before us in the examination of the testimony in this case the rule of appellate procedure when that testimony is conflicting and the other rule likewise so often mentioned and followed by this court when a party comes here with a finding and judgment against him that we:

"* * * must assume that the evidence in favor of the successful party is true, leave out of consideration entirely the evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it." (Jacoby v. The Town of the City of Gillette, 62 Wyo. 487, 494; 174 Pac. (2d) 505), and cases cited,

we shall briefly refer to some of the testimony here which, under these rules, it is proper for us to examine. We may here note that confirming the rule last above recited 3 Am. Jur. 470 Section 901 states that:

"The weight of conflicting evidence in an action tried by the court without a jury is exclusively for the trial court, and the appellate court must accept as true that which tends to sustain the decision and reject any testimony in conflict with it."

A. J. Grantham, claimant, testified that he was employed by the Union Pacific Coal Co., since September 1947 and was in the employ of that company on August 29th, 1949. On August 8th, 1949, a wooden bar about 16 feet long and close to six inches through fell on his back. However, he was able to continue his employment that day and finish the shift. He reported to the employer. He did not have to have assistance to leave the mine that night. He reported to Dr. Kos. He did not return to work the next day and was out four days; then he returned to work and worked until August 29th, 1949. On that day, so he testified: "I was carrying a steel pan. My back gave way and I fell. Arthur Cabral was present at that time. We were carrying it up-hill to the face from the bottom entry." After the accident on August 29th he did not continue work on that day. In explanation of what happened he said: "Back give way. Loaded me in a car, sent me out. I couldn't move my legs; they took me out of the mine in a car motor, put me in another car outside and took me to the hospital," where Dr. Kos treated him. He has received some compensation in this case. Two months he was paid until October 31, 1949, that is, until the last of October. He has not been able to return to work. He was born in 1926, is married and has two children, one seven, the other four. Since that time he has seen Dr. Whiston, Dr. Kos, Dr. Bertoncelj, Dr. Prevedal, also Dr. McDill. Dr. Whiston took x-rays of claimant at Cheyenne. He still goes to Dr. Prevedal. On cross-examination the same witness stated that on August 29th, 1949, "we were carrying a pan up-hill, my back gave way and I fell." When he was discharged from the Navy he was not advised as to anything concerning his back; never had soreness or back trouble prior to August 8th, 1949. The doctors who have examined claimant "say I need a fusion." Dr. Kos treated him for the injury on August 29th, 1949. He had pain in his

back at the time of the trial, was not able to lift. The pan he was lifting was close to four hundred pounds in weight. There were four of them lifting it. He is not eligible for re-enlistment in the navy on account of physical defects but they were not "for the spine."

Dr. Kos released him at the end of October 1949 to get an operation. He signed the stipulation quoted above.

HUGO MAGNETTI—a miner in the employ of the Union Pacific Coal Co., is acquainted with claimant and was working with him in the mine on August 8th, 1949. He stated: "He and I work together, were alone together." Witness asked claimant if he was hurt on account of the falling bar on August 8th, 1949, and claimant said: "Yes, it hurts a little." It struck him about the middle of the back, but he completed the shift and left with the witness in the morning.

ARTHUR CABRAL—a miner in the employ of the Union Pacific Coal Co., since March 3rd, 1949, is acquainted with the claimant. He was working in the mine at that time. He testified they needed one of the pans which are 13 feet long, 18 inches wide and of $\frac{1}{4}''$ steel. "We all grabbed one corner of the pan instead of dragging it, we raised it up; claimant was on the heavy end. We started up when Grantham fell down. We kept holding it up. He didn't get up. We finally took the pan up. He sat down for a while out of the way. He had complained about a pain in his back before that time. When we first started the shift witness told claimant to dig a place there in order to put the pan. I saw he was getting on his knees and wondered why. I didn't question him until after a while he got on his knees to shovel. Every time he would get up he would put his hand on his hip. Carrying the pan happened after that."

PAUL A. KOS—is a doctor of medicine graduate of a regular school licensed to practice within the State of Wyoming since 1937. He was called upon to treat the claimant in August 1949. That was August 29th. Witness saw him in the hospital. He made an x-ray of him. It was taken of his spine. He took an A.P. and lateral x-ray of the lower back and some peculiarity was evident in the spine, so I referred the x-ray to Doctor Whiston for a further interpretation. In addition to the weakness of the back of the fifth vertebra, he had a prespondylolisthesis; that is the equivalent of a slippage of the vertebrae on one another, or the last vertebra on the sacrum. In this particular case it happened to be a malalignment of the fifth lumbar with the sacrum. When that slips it produces an intense stress on the ligaments in the back. Witness has not seen claimant for some time. The last time he saw him was somewhere around November or December 1949. He was able to return to work the last time he saw him, under the advice of Dr. Whiston that a support would probably relieve the patient of the symptoms. If he was a young man doing hard work, he would advise a fusion for more permanent results. A fusion would stabilize the back in that particular area. He has his regular ligaments between the fifth vertebra and the sacrum, and of course, the interlacing of the lamina of the vertebrae that holds them together. It is a congenital defect. The witness stated also in the general course of a back, in the usual, average, vertebra; then coming down from the dorsal spine into the lumbar, they increase in size because of the greater weight bearing, until we get down to the sacrum. As a rule the fifth is very commonly in analogous form, in a great percentage of patients. It commonly takes up a load in the body of the vertebra. Instead of being a solid mass, sometimes it is just made of calcium, about which it has weakened. That is what the witness termed

an abnormality of the fifth lumbar vertebra or the congenital abnormality. In addition to that congenital formation there was an anterior displacement which he had not noticed, but which Dr. Whiston interpreted in the x-rays. That anterior displacement was not caused by trauma. It was congenital. The interpretation is that it is a congenital displacement. The way it was displaced was on a lateral view (assuming that this was the back here), it would be a shifting of the vertebra instead of being completely in line, you get that on a lateral picture. You get the abnormality or the congenital formation of the body other than the normal from the anterior. If claimant was struck close enough to the area of the congenital abnormality it would have some influence on that. After the condition was aggravated without having a fusion witness believes definitely it would regain its former strength. He believes it did in this case. He believes the claimant is as strong now as he was before, that is as strong as he was when he first saw claimant. Witness stated the process they were treating at the time of August 29th was from the lifting and falling backwards. Claimant had had a work period previous to that an intermission between injuries where he had been working, and the first injury. He had three or four days' treatment in the office. After witness treated claimant he released him as being in a condition to go back to work as concerned the injury on August 29th, in the back. The diagnosis witness had, at claimant's admission to the hospital, was a lumbar sprain and this congenital defect. Witness was treating claimant for the injury had on the 29th August, 1949, i.e. the spinal injury. Cross-examination: When witness used the term "congenital displacement" "it is meant that the individual is born with that condition." On the advice of Dr. Whiston in his letter it was stated he could be treated with a brace or with the fusion. At the time of the injury of August 29th, 1949, he was

hospitalized and traction was put on for a few days. This caused an irritation to the leg. The traction was removed and a cast was applied. Witness applied the cast on September 6th and released claimant from hospital on September 8th. He was told to report back to the clinic for treatment which he did periodically. He was put on compensation. At the end of several months witness told claimant that when he was free of pain witness would try to get him some surgery because of this lesion. That surgery would be for the purpose of correcting this congenital displacement. It would not be for the purpose of correcting the injury which claimant received. Towards the last two weeks the cast was removed. Claimant reported to the clinic for diathermy treatment, and stated he was free of pain. Witness told claimant he was released and could go to work or could have surgery, but witness advised him not to work but to get the surgery. From then on witness treated the complaint and witness called Dr. Whiston and had him write to the Vocational Center for rehabilitation. Claimant was sent to the Veterans' Hospital to see which one would take care of his condition. Witness believes that the injury on the 8th or the 29th aggravated his congenital condition, but said he believed the aggravation to be temporary—much the same as a sprained back, and said he believed claimant was more susceptible. He had just been injured a few weeks previous to that. Because of the nature of the back witness advised Dr. Whiston it would take surgery before attempting to work. That surgery was obtained and refused. When an employee of the Company is able to go back to work the physician attending him prepares a formal release. They will sometimes come in for it, but some don't. We have separate blanks. Under the circumstances here, this is the statement or blank we make or a surgical report, stating the patient's condition, and under it giving some added information,

whether they are to be continued under treatment or compensation for the injury. By that witness means whether they are still under treatment or whether they are able to return to work. Witness stated he had here Employer's Exhibit No. 2, that claimant was released for work November 1st, 1949 which Employer's Exhibit No. 2 reads as follows:

"November 14, 1949

"To_____Jim Lawes_____Mine Superintendent _____Winton, Wyoming_____.

"This is to certify that on the _____31_____ day of November (October) 1949 I examined_____A. J. Grantham_____ who was injured on the _____29_____day of_____August_____ 1949, while engaged in his employment. I find his condition at this time to be _____good_____. Released for work November 1, 1949. Because of said injury, workman is still incapacitated from performing any work at any gainful occupation, but in my opinion should be able to return to work November 1, 1949.

_____(Show approximate date)

"The above named workman is now under my medical or surgical treatment for said injury.
"Complained of pain in lumbar region. No visiable (visible) injury.

/s/_____Paul Kos_____M.D.

Local Surgeon

Paul Kos, M.D."

Other physicians and surgeons gave their testimony in the case. There was ,however, no dispute on their part that the condition of claimant's spine was congenital. Several of them nevertheless, disagreeing with Dr. Kos, stated that claimant could do only light work and not the work required in a mine. These doctors had seen claimant only once. The claimant was under the care of Dr. Kos for several months as hereinbefore stated.

The trial court found that claimant was not entitled to compensation beyond November 1st, 1949, as stated above and adjudged that A. J. Grantham's claim for compensation "be and the same is hereby denied." Exception was taken to this judgment by claimant and this appeal was entered in due course.

It will be noted that the conflict of the testimony was between claimant's own witnesses; nevertheless concerning that situation 5 C.J.S. 742 Section 1657 says that:

"The rule prohibiting the review of findings based on conflicting evidence applies where the conflict is between witnesses for the same party as well as between witnesses for the respective parties."

In Frazee v. Fox Film Corporation 45 Cal. App. 661, 188 Pac. 286, the court used this language:

"Upon this conflicting evidence so presented, it was the sole province of the trial court to determine the questions in issue; and, having done so, its findings thereon must be deemed conclusive and binding upon this court. "This rule, which needs no citation of authorities, applies with equal force to conflicting testimony between the witnesses for defendant, as it does to like conflicts between witnesses of the respective parties. Hence, conceding the testimony of Carlos to be inconsistent with that of Fox, both of whom were witnesses for defendant, the question as to which one of them was entitled to credence in the statements made was for the determination of the trial court."

See also Dietlin v. General American Life Ins. Co., 4 Cal. (2d) 336, 49 Pac. (2d) 590.

Many years ago this court in Bissinger & Co. v. Weiss, 27 Wyo. 262, 267, 195 Pac. 527, remarked that: "Where the testimony of a witness is contradictory, and it becomes necessary, as in this case, for the trial court to determine its meaning, a finding in that regard should have the same standing when being renewed (reviewed) on error, as any finding of fact on conflict-

ing evidence, and should not be disturbed unless it be without substantial support."

The argument of the claimant asks us in effect to prefer the testimony of the doctors favoring claimant in disregard of the views of the trial court, and as a consequence, reverse the trial court's decision. As very well said by the Supreme Court of Iowa in Snyder v. Bernstein Bros., 201 Ia. 931, 208 N.W. 503, 505:

"It is not our function to determine which class of witnesses was the more expert. The trial court had the benefit of a more critical study of the testimony and the witnesses than we have. Plaintiff's experts testified that the reasonable value of the premises was $100 per month. Defendant's witnesses testified that the value was $40 to $50 per month. Apparently the trial court attempted to strike a happy medium, and, upon the conclusion of all the testimony, fixed the reasonable value at $60 per month. There is no mathematical rule that will aid us in solving this problem."

We may also observe that the Supreme Court of Errors of the State of Connecticut in Kulak v. Landers Frary & Clark, et al 120 Conn. 606 181 A. 720, 721 has cogently pointed out that:

"A finding or a conclusion cannot be held to be erroneous merely because it was based upon the testimony or opinion of one witness in opposition to that of several others testifying to the contrary. Condon v. Pomroy-Grace, 73 Conn. 607, 614, 48 A. 756, 53 L.R.A. 696; Jadovich v. Collins Co., 109 Conn. 62, 66 145 A. 25. A conclusion reached upon comparison and examination of conflicting professional opinion, by reliance upon one rather than another, can rarely be found erroneous in law in the absence of bad faith. Driscoll v. Jewell Belting Co., supra, 96 Conn. 295, at page 300, 114 A. 109."

See also Driscoll v. Jewell Belting Co., 96 Conn. 295, 300 114 A. 109.

Our conclusion after a careful survey of the record

in the case at bar, is that we can find no prejudicial error committed on the part of the district court of Sweetwater County in the disposition of this litigation and the judgment under review should be affirmed.

*Affirmed.*

KIMBALL, C. J., and BLUME, J. concur.