86 N.J. Super. 253 (1964)
206 A.2d 610
MONMOUTH COUNTY WELFARE BOARD, A BODY CORPORATE OF NEW JERSEY, PLAINTIFF,
v.
RENNEL COWARD, DEFENDANT.
Superior Court of New Jersey, Monmouth County Court, Law Division.
Decided December 23, 1964.
*255 Mr. S. Thomas Gagliano argued the cause for plaintiff.
Mr. David M. Pindar argued the cause for defendant (Messrs. Wilentz, Goldman & Spitzer, attorneys).
SMITH, J.C.C.
This is an action under N.J.S.A. 44:7-19 by the Monmouth County Welfare Board against Rennel Coward, the defendant, seeking reimbursement for old age assistance payments made to his mother, Mary Coward. The mother is aged 77 and resides at 41 Main Street, Keyport. She has been a recipient of old age assistance since June 1953 and is presently receiving a total payment of $117 per month, $116 being paid by the Board and $1. being paid by the son since January 1959.
On November 15, 1963 the Director of the Monmouth County Welfare Board entered an order against the defendant requiring him to reimburse the county by payment of $95 per month. The amount was arrived at by using the usual formula in these matters. The son resists the payment on the ground that his mother is not eligible for old age assistance since she has a child and another person (the son's wife) able and willing to support her, and further that they are willing to afford her support in kind by having her live with them in their home.
Mary Coward, the mother, has lived all her life in Keyport. Her husband, the father of the son, died in 1936 and consequently no social security payments are available to the mother. After the father's death she did housework and washing and ironing for others until she suffered a heart attack *256 preventing her from doing any work. She occupies a small second floor apartment in Keyport and prefers to continue to live alone. The mother has never lived with her son since his marriage and she refuses the son's offer to live in his home. If there is any underlying cause for her refusal or if there is any discord between the mother, the son and his wife she failed to express it, merely stating that she had always lived alone since the death of her husband and that she desired to continue to maintain her independence and self-maintenance with the help of the old age assistance in her present home.
The defendant son, 58 years old, is regularly employed with a net annual wage of approximately $3,000 and his wife, with whom he is living, is regularly employed at an annual net salary of approximately $4,200. The son and his wife occupy one-half of a duplex home in South Amboy. Their one-half contains three rooms and bath downstairs and two bedrooms upstairs. The son and his wife occupy one bedroom and he offers the other bedroom for the use of his mother. He further offers to supply all other necessary facilities for her proper support and maintenance. The son and his wife are in possession of the South Amboy home under some agreement with their daughter, the owner of the fee, whereby they may continue to occupy the premises upon payment of all current expenses and charges.
The defendant contends that the mother is not a "needy person" within the terms of the statutory provisions of N.J.S.A. 44:7-3 and 5 arguing that she is not without persons defined in the act who are able to support her. He further contends that since he is a responsible person chargeable by law with support who has offered to accept the old age recipient in his home that there is no statutory authority that will require him to reimburse the Welfare Board. Lastly the defendant contends that he is without sufficient financial means to comply with the order of the Director.
The Welfare Board argues that the mother is a needy person within the act; that the defendant is financially able to contribute to the support of his mother and the son's offer *257 to take her into his home does not relieve him of the obligation to reimburse the Welfare Board.
There is no common law duty to support owed an indigent parent by his children but this has long since been remedied by the enactment of statutes fixing the duty upon certain relatives and such actions for support or reimbursement may be enforced under the statute by direct actions of the indigent person or by certain governmental representatives who have a right of indemnification for reimbursement against the responsible relatives for the support. In modern times the Federal government, recognizing the social problems and need of the indigent old and also the tremendous financial burden created thereby, entered the area and Congress enacted 42 U.S.C.A. § 301 et seq. "to encourage each state to help needy individuals obtain self care." This authorized grants and aid to the states in making payments under the old age assistance provisions. Our act which implements the distribution of these funds for old age assistance is N.J.S.A. 44:7-1 et seq. The act is in the nature of social legislation and is to be construed liberally. R.S. 44:7-2.
The statute defines assistance as "money payments to or on behalf of eligible persons." N.J.S.A. 44:7-1. An eligible person is a resident who has attained age 65, without adequate support, unable to support himself and without "parents, spouse or child able to support him and without other persons able and willing to support him." N.J.S.A. 44:7-5.
Concededly the mother meets all the qualifications while she is living alone. Consequently on the face of her application it would appear the Director's determination as to her original eligibility was correct. But the son's present position raises several questions. Did the son by his conduct originally in failing to do anything lend credence to the determination and imply his agreement therewith? Did the son by his act of payment of one dollar per month as reimbursement to the County since 1959 indicate agreement with the determination? By reason of his acts and conduct is he now precluded from asserting a right which might otherwise have existed *258 upon the original determination of the Director? Inferentially, does his complaint, now, that he is financially unable to reimburse the County for the full amount requested, add substance to the Director's finding and determination of the eligibility of the mother that she was and is without responsible relatives to support her? From a review of all the facts the answers to all these questions must be in the affirmative. In addition to his implied agreement with the determination he has accepted the benefits. The son's acts and conduct over the years belie his words. The court finds as a fact that the son's denial of the eligibility of his mother is not made in good faith and is without substance.
The court therefore finds as a fact that the Director's determination as to the original and present eligibility of the mother for old age assistance is legally sound and correct, and the son is estopped as a matter of law from contending that his mother is not eligible.
The defendant's counter-offer to support "in kind" in lieu of reimbursement to the County requires consideration. This appears to be an assertion of a right by the chargeable relative to decide where and what support shall be given. This would be contrary to the beneficial social legislative scheme and contrary to the statutory authority vested in this court. The statute directs that upon the chargeable relative's failure to perform the Director's order to support this court may summon the party to appear and shall in a "summary way" inquire into the cause of the failure and "may order and adjudge the able relative * * * responsible for the support * * * to pay such sum * * * as the circumstances may require in the discretion of the court * * *." N.J.S.A. 44:7-19. (Emphasis added) Moreover, the statute authorizes the Welfare Board "to bring an action in any court of competent jurisdiction to recover any sum of money due for assistance given any person under this chapter against such person for the support." (Emphasis added) The legislative intent is to require the chargeable relative to pay a sum of money for the support. Viewing the son's request to support *259 "in kind" rather than assistance by the payment of money, in the light of the statutory intention and direction, it is clear that the court is without any authority to direct such support "in kind." The court's statutory authority is restricted to requiring reimbursement by the payment of a sum of money. If the Legislature intended otherwise, that is to grant a right to the chargeable relative to decide where and how the support assistance shall be given, it would have so provided. There is no such provision or even implication of such a right in the statute. It is abundantly clear from the statute that no such right is reposed in the chargeable relative to avoid reimbursement payment, and no such authority has been granted to the court to direct support "in kind."
The obligation to support as previously stated does not arise under the common law but rather by statute, and in the absence of some statutory direction it does not carry with it the right to determine where and how the support shall be furnished where it appears, as here, that the recipient of the old age assistance is an eligible person. Moreover, it would seem to run counter to the spirit of such social legislation to compel the mother to be forced to be an unwilling inmate in her son's home. The very purpose of the federal act authorizing grants to states is to encourage each state to help the needy individuals to maintain self care. 42 U.S.C.A. § 302. The underlying theory is to promote in the aged indigent some sense of independence and self-maintenance with the help of old age assistance funds and to fix minimum standards for their support. To give the statute the interpretation contended for by the son would render the legislative authority for the support of the old, the infirm, the indigent, meaningless and subject to the whim and caprice of the legally responsible persons. It would undermine the legislative scheme to remedy a serious social problem. It would be a step backward and leave the question of support of such persons in a limbo between no common law duty and a very ineffective statutory right.
*260 This matter has confronted the courts of other states only infrequently and in controversies arising under statutes the provisions of which create and implement the obligation of a child to contribute to the support of his indigent parent in ways differing from those provided in our own statute. See, e.g., Los Angeles County v. LeFuente, 20 Cal.2d 870, 129 P.2d, 378 (Sup. Ct. 1942), cert. denied 317 U.S. 698, 63 S.Ct. 441, 87 L.Ed. 558 (1942) (where under the California old age assistance act, a child financially able to contribute to a parent's support may be compelled to do so notwithstanding the refusal by the parent of the child's offer of support in kind in reasonably suitable quarters); Condon v. Pomeroy-Grace, 73 Conn. 607, 48 A. 756, 53 L.R.A. 696 (Sup. Ct. Err., 1901) (where child's offer in kind was held not to discharge the obligation to support because such obligation does not carry with it the right to determine where the support will be furnished, and because a parent will not be forced to be an unwilling inmate in his child's home). These decisions are entirely consistent with the broad purposes of this class of social legislation and, specifically, those of our statutes as stated above.
The defendant's counter-offer to support in kind is without basis in fact and without merit in law.
The court has examined the stipulation as to the income and expenses of the son which are interwoven with the income and expenses of his wife. There are no other dependents. It would appear that the maintenance of the South Amboy residence for the husband and wife, in lieu of rent, is approximately $75 a month and that in addition it would appear there is required about $200 a month to maintain the home. So that their total cost is about $300 a month. In addition they jointly have a number of outstanding obligations, including loans. There is a suggestion in the record that though the son is in otherwise good health he suffers some non-debilitating gastric condition which requires some regular medication. Under the circumstances, the amount fixed by the Director appears to be excessive. However, the son is well able *261 to pay at least $10 per week, or $40 per month, reimbursement to the county while he is regularly employed and in good health.
The $95 per month fixed by the Director will therefore be reduced and the defendant son directed to pay the sum of $40 per month as reimbursement to the Monmouth County Welfare Board. No arrearages will be allowed.