STATE OF CONNECTICUT *v.* LILLIAN VACHON

BALDWIN, INGLIS, O'SULLIVAN, QUINLAN and WYNNE, JS.

Argued October 13—decided December 8, 1953

*William H. Shields,* with whom, on the brief, was *Griswold Morgan,* for the appellant (defendant).

*Edward C. Hamill,* prosecuting attorney, for the appellee (state).

QUINLAN, J. The information in this case charged the defendant, in one count, with operating a hospital known as Vachon's Convalescent Home without a license in violation of General Statutes, § 3823, and, in a second count, with maintaining a home for the aged without a license in violation of General Statutes, Cum. Sup. 1951, § 579b. After a demurrer was overruled, trial was had and judgment of guilty rendered. The defendant has appealed.

The claims of law raised by the assignment of errors upon both the demurrer and the trial are that

§§ 3823 and 579b are each an illegal and unconstitutional delegation of the legislative power of the General Assembly to an administrative board and therefore violate article second, article third, § 1, and article first, § 10, of the constitution of Connecticut as well as the fourteenth amendment to the constitution of the United States. If they are unconstitutional, the defendant was not guilty. The statutes appear in the footnote.[1]

---

[1] "Sec. 3823. LICENSING OF HOSPITALS. No person, firm or corporation shall operate a hospital for the care of the sick unless such person, firm or corporation shall have obtained a license therefor from the state department of health. For the purpose of this section, a hospital is defined as an institution for the lodging, care and treatment of persons suffering from disease or other abnormal physical conditions. Said department shall, in its sanitary code, define the minimum requirements for a hospital. Said department, after receiving an application in writing, making such investigations as shall be deemed necessary and finding the specified requirements to have been fulfilled, shall grant a license to operate a hospital. Such license shall terminate on December thirty-first of each year and may be revoked by said department, after hearing, for failure by the holder thereof to carry out the requirements established by law. The provisions of this section shall not apply to any hospital or institution wholly supported by the state, or to any hospital or institution partially supported by the state, which is approved by the American College of Surgeons as unconditionally meeting its minimum standards, or to any institution coming under the provisions of section 4125 or section 4687. Any person or any officer or agent of a corporation who shall violate any provision of this section shall be fined not more than one thousand dollars or imprisoned not more than six months or both."

"Sec. 579b. HOMES FOR AGED PERSONS. The public welfare council may license any suitable person to maintain a home in which two or more persons beyond the age of sixty years shall be cared for, may prescribe the conditions of health, safety and sanitation under which such a license may be granted and may make regulations to provide for the conduct of such homes in accordance with reasonable standards of health, safety and sanitation. Application for such license shall be made upon a blank provided by said council and shall state the location of such home, the number of persons which may be cared for therein, the location of any other such home maintained by the applicant or any member of his immediate family and, in the case of an institution, the purpose for which the institution is founded, the names

There is a vast body of law throughout the country recognizing the power of the legislature to require a license for the transaction of business, for the purpose of regulating its conduct, as a proper exercise of the police power. *State* v. *Kievman,* 116 Conn. 458, 463, 464, 165 A. 601; *Windsor* v. *Whitney,* 95 Conn. 357, 368, 369, 111 A. 354; 33 Am. Jur. 336, and see 11 Am. Jur. 1044. Such power must be exercised subject to constitutional limitations imposed by the state and federal constitutions. *State* v. *Conlon,* 65 Conn. 478, 484, 33 A. 519. The state may "regulate the relative rights and duties of all within its jurisdiction so as to guard the public morals, the public safety and the public health, as well as to promote . . . the common good." *House* v. *Mayes,* 219 U.S. 270, 282, 31 S. Ct. 234, 55 L. Ed. 213; *State* v. *Nelson,* 126 Conn. 412, 423, 11 A.2d 856; *State* v. *Heller,* 123 Conn. 492, 496, 196 A. 337. This power has been exercised with respect to several of the activities of life, such as providing for the examination of persons to determine the presence of communicable diseases. *State*

___

of its chief officers and the person actually in charge, with such other information as shall be required by said council. The council shall have supervision of all such homes and may visit and inspect them at any time and examine their accounts. The proprietor of each such home shall file annually with said council a report stating the number of inmates received and the number removed during the year, the number and causes of deaths and the average cost of support per capita, with such other information as may be required by said council. Each person licensed under this section shall be issued a certificate for the term of one year and such certificate may be renewed for a similar term in such manner as said council shall direct. Said council may at any time revoke any such certificate. The provisions of this section shall not apply to persons caring for relatives, institutions receiving state aid or maintained by municipalities, specially chartered institutions or charitable institutions. Any person violating any provision of this section shall be fined not more than five hundred dollars, and each month during which he shall fail to comply with any such provision shall constitute a separate offense."

v. *Wordin,* 56 Conn. 216, 226, 14 A. 801; *Rock* v. *Carney,* 216 Mich. 280, 185 N.W. 798; *Blue* v. *Beach,* 155 Ind. 121, 56 N.E. 89; *In re McGee,* 105 Kan. 574, 185 P. 14; note, 8 A.L.R. 836. It is a valid exercise of the police power not only to prevent the introduction and spread of infectious and contagious diseases but also to empower health boards to make regulations. *Blue* v. *Beach,* supra, 130; 25 Am. Jur. 288, § 5. Such laws are to be liberally construed to effectuate the purpose of their enactment. *Rock* v. *Carney,* supra, 293. Thus it will be seen that it is not so much a question of the power to do these things as it is whether the method by which the power is exercised is within constitutional limitations.

In *State* v. *Stoddard,* 126 Conn. 623, 628, 13 A.2d 586, we said: "A Legislature, in creating a law complete in itself and designed to accomplish a particular purpose, may expressly authorize an administrative agency to fill up the details by prescribing rules and regulations for the operation and enforcement of the law. In order to render admissible such delegation of legislative power, however, it is necessary that the statute declare a legislative policy, establish primary standards for carrying it out, or lay down an intelligible principle to which the administrative officer or body must conform, with a proper regard for the protection of the public interests and with such degree of certainty as the nature of the case permits, and enjoin a procedure under which, by appeal or otherwise, both public interests and private rights shall have due consideration." See also *State* v. *Darazzo,* 97 Conn. 728, 734, 118 A. 81; *Ingham* v. *Brooks,* 95 Conn. 317, 330, 111 A. 209.

We consider the two acts separately in the light of this well-recognized rule. Section 3823 is a part of chapter 181, which is entitled "State Department

of Health." This chapter is a part of title 30, which deals with public health and safety. The chapter provides for the creation of a state department of health to consist of a commissioner and a public health council. §§ 3797-3799. The commissioner is directed to employ the most efficient and practical means for the prevention and suppression of disease, to administer the health laws and the sanitary code and to prepare rules and regulations for the council. § 3801. The chapter is replete with specific provisions dealing with the public health in many of its phases. Section 3823 is one of those provisions. It should be read in connection with the entire chapter. It provides that no one shall operate a hospital for the care of the sick without a license from the state department of health. It defines a hospital. It states that the department of health shall, in its sanitary code, define "the minimum requirements for a hospital."

Presumably, a hospital would not be licensed unless it complied with the minimum requirements of the sanitary code, which is authorized by §3800. This section requires the council, of which the commissioner is chairman, to establish a sanitary code. The code "may provide for the preservation and improvement of the public health." Its obvious purpose is to preserve the public health. The qualifications set up for the commissioner and the council indicate that the council must be composed, in part at least, of men who understand sanitation as it relates to public health matters. Section 3800 specifies standards which are sufficient to guide the council in the framing of a sanitary code. Sanitary code provisions governing hospitals under § 3823 appear in the Connecticut departmental regulations, § 181-1-200, which are by statute (§ 3800) required to be

published. We take judicial notice of the sanitary code (*Roden* v. *Connecticut Co.,* 113 Conn. 408, 415, 155 A. 721) to supplement the statutory construction. *State* v. *Kievman,* 116 Conn. 458, 465, 165 A. 601. By rules concerning professional personnel and other matters, the code provides safeguards and precautions for the care of patients in such a hospital. A reading of chapter 181 and the specific provision under attack, which is a part of it, indicates a policy on the part of the legislature of preserving the public health by a sanitary code.

Any suggestion that there was a failure to set up standards to guide the exercise of discretion by the council in preparing regulations with which the applicant for a license had to comply, or governing the applicant himself (*State* v. *Van Keegan,* 132 Conn. 33, 38, 42 A.2d 352) has no validity here. The principle requiring standards is subject to "the qualification that where it is impracticable to lay down a definite or all-comprehensive rule, or where the ordinance relates to the administration of a police regulation and is necessary to protect the general welfare, morals, and safety of the public, it is not essential . . . that it prescribe all the conditions upon which [the] license shall be granted or refused." *State ex rel. Altop* v. *Billings,* 79 Mont. 25, 35, 255 P. 11; see *Engel* v. *O'Malley,* 219 U.S. 128, 137, 31 S. Ct. 190, 55 L. Ed. 128; *People* v. *Harley,* 230 Mich. 676, 680, 683, 203 N.W. 531. These cases also hold that such ordinances do not contemplate the exercise of arbitrary power dependent upon whim and caprice. *State* v. *Gray,* 61 Conn. 39, 46, 22 A. 675. The statute complies with the rule laid down in *State* v. *Stoddard,* 126 Conn. 623, 628, 13 A.2d 586.

We turn to a consideration of the second count.

In § 579b the legislative policy clearly appears as having the purpose and intention of providing for the health, safety and sanitation of the public. Primary standards are provided, if in somewhat general terms. This does not destroy their validity in legislation concerning health. *In re McGee,* 105 Kan. 574, 578, 185 P. 14. The act provides the standard for the age of the persons to be cared for, states the minimum number of persons to be housed before the act becomes obligatory, and requires that the person licensed be a "suitable person." The words "suitable person" have a definite meaning in our law, and their use in the act furnishes a standard by which the public welfare council must be guided. *Smith's Appeal,* 65 Conn. 135, 138, 31 A. 529; *Hopson's Appeal,* 65 Conn. 140, 143, 31 A. 531. "Reasonable standards" is also a term which is, in view of the declared purpose and policy of the act, intelligible to, and may be defined intelligently by, the council in the light of the usage of a home for aged persons and the defined users.

In her attack upon both acts, the defendant makes the further claim that they are unconstitutional because they make no provision for appeal to the courts. The right of appeal exists only under statute; *Long* v. *Zoning Commission,* 133 Conn. 248, 252, 50 A.2d 172; *Etchells* v. *Wainwright,* 76 Conn. 534, 541, 57 A. 121; and parties have no vested right thereto. *Neilson* v. *Perkins,* 86 Conn. 425, 428, 85 A. 686. So far as the fourteenth amendment to the constitution of the United States is concerned, it suffices for due process that "the law shall not be unreasonable, arbitrary or capricious." *Nebbia* v. *New York,* 291 U.S. 502, 525, 54 S. Ct. 505, 78 L. Ed. 940. It is not essential to the constitutionality of a statute which authorizes an administra-

tive board to make orders or grant licenses that it contain a provision for an appeal, in the technical sense, from the board's action. If any person claims to be harmed by such an order, his constitutional right to due process is protected by his privilege to apply to a court. It is unnecessary to discuss specifically the line of cases in Connecticut having to do with the review of administrative action because of our constancy of adherence to the principle of interpretation laid down in those cases. They involve acts wherein it was provided that the actions of certain boards should be "conclusive" and "final." We have uniformly held that the action of such a board should be final and conclusive unless directly attacked by some established procedure. *Connecticut Mutual Life Ins. Co.* v. *Rogers,* 113 Conn. 14, 17, 154 A. 246. To the same effect are *State* v. *New York, N.H. & H.R. Co.,* 60 Conn. 326, 334, 22 A. 765; *Equitable Life Assurance Society* v. *Slade,* 122 Conn. 451, 454, 190 A. 616; and *Bridgeport Hydraulic Co.* v. *Rempsen,* 124 Conn. 437, 444, 200 A. 348. A review of the action of such a board is not precluded. *Newington* v. *Mazzoccoli,* 133 Conn. 146, 153, 154, 48 A.2d 729.

We cannot hold that either § 3823 or § 579b constitutes an illegal delegation of legislative power in derogation of the constitution of Connecticut or the constitution of the United States.

There is no error.

In this opinion the other judges concurred.