JANNIE LANGS, GUARDIAN OF THE ESTATE OF EVERETT C. LANGS, ET AL. *v.* JOHN F. HARDER, COMMISSIONER OF WELFARE

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued October 5—decided December 4, 1973

*Edward F. Pasiecznik,* assistant attorney general, with whom, on the brief, was *Robert K. Killian,* attorney general, for the appellant (defendant).

*James I. Lotstein,* with whom, on the brief, was *Paul W. Orth,* for the appellee (plaintiff).

MacDonald, J. The basic question presented by this appeal is whether the defendant welfare commissioner abused his discretion and acted arbitrarily and unreasonably in discontinuing welfare assistance granted for the support of the plaintiff Jannie Langs' minor child Everett Langs who was the beneficiary of an estate of over $14,000 resulting from the settlement of a personal injury claim, that estate being held by the plaintiff, under the control of a Probate Court, for the use of the minor.

The facts, as summarized in the pleadings and in the memoranda of decision filed by the courts below are not in dispute. Everett Langs, at the age of two years, was badly bitten on the face by a dog and a tort claim in his behalf against the owner of the dog was settled for an amount approved by the Probate Court for the district of Hartford and which, after payment of medical expenses, attorney's fees and costs, resulted in the payment to the plaintiff, as guardian, of the net sum of $14,144.65. This sum of money, at all times relevant hereto, has been held

by the plaintiff as guardian of her minor son's estate in a savings account under the supervision of the Probate Court.

At the time of obtaining the settlement funds, and for some time prior thereto, the plaintiff and her six minor children, including Everett, were recipients of welfare assistance awards from the Connecticut state welfare department under the state's aid to dependent children program, hereafter called A.D.C., which is, in part, federally funded. Upon learning of Everett's tort claim settlement and the guardianship of his estate, the defendant commissioner of welfare found him ineligible to receive assistance as a dependent child and removed him from public assistance effective March 31, 1969. The plaintiff requested a fair hearing under § 17-2a of the General Statutes claiming that such discontinuance of assistance was wrongful, and after such hearing the designated hearing officer upheld the decision of the defendant commissioner. This decision was appealed by the plaintiff under the provisions of § 17-2b to the Circuit Court which found that the commissioner did not as a matter of law abuse his discretion and that he was not arbitrary or unreasonable in discontinuing assistance to Everett. On appeal from that decision, the Appellate Division of the Court of Common Pleas found error and directed judgment sustaining the plaintiff's appeal and from that judgment, upon the granting of certification, the defendant has appealed to this court.

It is the position of the defendant commissioner that the right to receive welfare is purely statutory and that he was not authorized by statute to distribute welfare to Everett Langs under the conditions existing on March 31, 1969, when such assist-

ance was terminated. In determining whether he abused his discretion and acted arbitrarily and unreasonably, therefore, we first must examine the applicable statutes in effect on that date.

Section 17-90 of the General Statutes provides, in relevant part, that "[t]he commissioner shall grant aid only if he finds the applicant eligible therefor" and § 17-94 provides that he "may, at any time, modify, suspend or discontinue any aid previously granted, when such action is necessary in order to carry out the provisions of this part." Section 17-82 defines a "dependent child" as meaning "a needy child under the age of nineteen . . . who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and who is living with his father, mother . . . or any other relative" and § 17-87 provides that "[a]id shall be granted on behalf of such dependent child or children and for the needs of such supervising relative to any such relative eligible therefor under this part to an extent adequate to enable the relative caring for such child or children, together with all other available income and support, to maintain a standard of living in the home reasonably compatible with health and decency for such child or children."

Section 17-83 directs that the "commissioner shall make regulations necessary to enable him to carry out the provisions of this chapter," and one of the regulations issued pursuant to that directive states: "Need exists when it is found that income and resources available to the individual or family group are insufficient to provide the standard of living which the Department considers compatible with

'health and decency.' " State Welfare Department Policies, 1 Public Assistance Manual, c. III, index 300. "Income and resources are interpreted as including (1) Capital assets in the form of real or personal property . . . (2) Available income, in cash or kind whether received regularly or occasionally." Id., index 302.[1] Included among the types of personal property requiring consideration in relation to eligibility are "Cash (on hand, in safe deposit box or elsewhere)" and "Bank accounts (savings or checking accounts)." Id., index 321.

The plaintiff's first contention is that the settlement funds were not a "resource" within the purview of the above statutes and regulations. She argues, in support of this proposition, that (1) the purpose of tort recovery is to restore the injured party to his original position, i.e., to "make him whole," and (2) that § 104 of the Internal Revenue Code; 26 U.S.C. § 104; recognizes that personal injury recoveries are, in effect, reimbursements for damages since they are not to be recognized or taxed as income.

We find the plaintiff's reliance upon the Internal Revenue Code to be unpersuasive. The central issue presented on this appeal is the scope of the commissioner's discretion in discontinuing welfare assistance which, in turn, ultimately depends upon an interpretation of the term "available resource." The

---

[1] State Welfare Department Policies, 1 Public Assistance Manual, c. III, index 302, continues: "Persons who have capital assets may no longer have income to meet their necessary living expenses. Department policy does not require a person to exhaust all of his capital assets before he can be found in need. Neither is it believed appropriate to grant assistance to a person who has a considerable reserve in property, which, if liquidated, could be used to meet his current needs."

fact that the fund in question herein is not to be taxed as income by the federal government is hardly determinative of whether it is a "resource" "available" for the support of the minor within the purview of the applicable state welfare statutes and regulations. If any federal statute were to be considered as having a bearing on the issues presented here it would be federal welfare, not tax, legislation. In this regard Congress has provided, in 42 U.S.C. § 601 et seq., for making payments to states which have adopted approved plans for aid to needy families with dependent children. The federal law, 42 U.S.C. § 602 (a), provides that the state plan must "(7) except as may be otherwise provided in clause (8), provide that the State agency shall, in determining need, *take into consideration any other income and resources of any child* or relative claiming aid . . . ." (Emphasis added.) Clause (8) of § 602 (a) provides that the state shall exclude from such consideration earned income of dependent children in certain situations not relevant here. It is worthy of note that Congress in mandating the consideration of "any other income and resources" of the child in determining need has seen fit specifically to exclude from such consideration only certain earned income and has made no reference to excluding other income or resources of the child from such consideration.

Insofar as the Internal Revenue Code is concerned, it is clear that, if it is relevant at all, it can serve only as a buttress to the plaintiff's main argument that the purpose of tort recovery is to restore the injured party to his original position, in that it is at least one legislative recognition of that theory. See, e.g., *Starrels* v. *Commissioner of Internal Revenue,* 304 F.2d 574 (9th Cir.).

The plaintiff's "make whole" argument is, at least at first blush, a compelling one. It has been stated that the purpose of tort recovery is to restore the injured party to his original position. See, e.g., Wright, Connecticut Law of Torts (2d Ed.), p. 351. At the same time, however, it frequently has been pointed out by this court that damages in personal injury cases are necessarily somewhat nebulous and cannot be ascertained with certainty. "Proper compensation for personal injuries cannot be computed by mathematical formula, and the law furnishes no precise rule for their assessment." *Lopez* v. *Price,* 145 Conn. 560, 569, 145 A.2d 127; *Russakoff* v. *Stamford,* 134 Conn. 450, 455, 58 A.2d 517; *Knight* v. *Continental Automobile Mfg. Co.,* 82 Conn. 291, 293, 73 A. 751. It can be argued that the theory of "making whole" was established essentially for the guidance of a jury or court in determining damages. Here that evaluation already has been reduced to cash in the bank by the settlement of the tort claim.

Furthermore, there is no evidence whatsoever that any of the funds in question are needed to make the plaintiff's minor son whole in any realistic sense, i.e., for special surgery, skin grafts, artificial limbs or similar remedial expenses. At the fair hearing the plaintiff's attorney maintained that the plaintiff desired to place allotted funds in an educational trust to be used for higher education or special education and training. The plaintiff in her brief maintains that one of the reasons the funds are needed is to allow Everett to "escape the cycle of poverty," apparently through education. These assertions are, at least to some extent, inconsistent with the "make whole" argument.

In *Snell* v. *Wyman,* 281 F. Sup. 853, 862 (S.D. N.Y.), aff'd, 393 U.S. 323, 89 S. Ct. 553, 21

L. Ed. 2d 511, a case upholding the constitutionality of a state statute allowing the state to seek reimbursement for welfare assistance granted from, among other things, personal injury recoveries, the court addressed itself to the "make whole" argument. "There is no point in dwelling upon the repeated suggestion that personal injury recoveries are designed to make people 'whole,' so that exactions from such funds deny due process by making them less than 'whole.' It seems sufficient to say that the Constitution we are supposed to expound gives us no authority to follow the figurative trails of metaphors like this." The court added in footnote 17, on page 862: "Consider the applicant who has no assets except $500,000 recovered to make him 'whole' in a personal injury suit. Would anyone suppose a welfare department must, or *could,* declare him eligible?" (Emphasis added.) That is precisely what, on a lesser scale, the plaintiff is asking this court to do. If the $14,000 is in fact a "resource," this court should not substitute its judgment for that of the commissioner as to whether such a sum is enough to preclude eligibility for welfare assistance.

In the absence of meaningful distinguishing factors, *Snell* v. *Wyman,* supra, has a controlling impact on the issue presented here. The plaintiff attempts to distinguish the *Snell* case and other cases upholding the consideration of tort recoveries as "resources" for the purposes involved herein by maintaining that those cases deal with "reimbursement" rather than eligibility. See, e.g., *Charleston* v. *Wohlgemuth,* 332 F. Sup. 1175 (E.D. Pa.). While this is factually correct, it actually serves to detract from the plaintiff's position. Surely it is more of a hardship to have a recovery for personal injury lost

in order to reimburse the state for funds already expended by the recipient than to terminate the eligibility of a recipient when there is a substantial fund available for support from such a recovery. This view was well expressed by Judge Kaufman in his dissent on other grounds in *Snell* v. *Wyman,* supra, 872: "My brothers would have us believe that for purposes of constitutional inquiry there is little difference between denying eligibility for assistance to one with substantial assets in hand derived from a tort claim, and recovering assistance from a former welfare recipient who succeeds in receiving compensation for injuries. *In the first case, however, the victim has the means of immediate subsistence—a test of eligibility;* if the recovery had been $500 instead of $500,000 he might still be eligible for aid. In the second, the attachment of a meager recovery can effectively destroy the means for future subsistence independence as well as remove the financial comfort given as compensation for physical pain." (Emphasis added.)

In that the commissioner is empowered, in fact directed, to consider all available resources, it scarcely can be said that he exceeded his authority and acted arbitrarily, illegally, or in abuse of his discretion in considering the tort settlement a "resource" in light of the federal welfare legislation; *Snell* v. *Wyman,* supra, and the cases in substantial agreement with it; see *Charleston* v. *Wohlgemuth,* supra; *Fitzpatrick* v. *Illinois Department of Public Aid,* 52 Ill. 2d 218, 287 N.E.2d 666.

The plaintiff further contends that because the recovery is now in a fund under the supervision of the Probate Court for the district of Hartford it is not "available" for the current necessary support of Everett Langs and thus would not render him

ineligible for assistance. While there apparently is no dispute over the fact that the income from the estate recovered can be utilized for the support of the minor, it is the plaintiff's assertion that no portion of the principal is available for disbursement without the consent of the Probate Court, which can be given only in cases of "urgent emergency." In support of this proposition she cites the following language from *Ehrsam* v. *Lee,* 101 Conn. 349, 354, 125 A. 621: "The guardian should not be permitted to exceed her income except in a case of urgent emergency."

In *Ehrsam* v. *Lee,* supra, the guardian of the estate had been limited, by a specific order of a court of probate, to $250 a month for the support and education of her wards. The issue to which the cited language was addressed was whether the guardian's account should be allowed in view of the fact that she apparently had exceeded the order without approval of the court. Read in that context, we interpret the cited quotation to be a somewhat inexact rendering of the general rule that, although it is desirable to confine expenditures for the ward's support and maintenance to the income of his estate, in the absence of a statute prohibiting it the guardian may in a proper case expend the principal for this purpose. See 39 Am. Jur. 2d, Guardian and Ward, § 71; note, 5 A.L.R. 632. Even in those states taking a restrictive view of the right to use principal for support it generally is allowed where a parent is unable to furnish support and maintenance, as is the case here. See 39 Am. Jur. 2d, Guardian and Ward, § 71; note, 5 A.L.R. 632, 652.

That principal is available for the support of a minor has been legislatively recognized in one re-

lated area. Section 17-62 (d) of the General Statutes (later amended by Public Acts 1969, No. 794, § 7) in effect at the time of the termination of the plaintiff's assistance, provided that where the commissioner is made the guardian of a dependent child, "[n]otwithstanding that any such child has *income or estate,* the commissioner may pay the cost of *care and maintenance* of such child, and may bill to and collect from the person in charge of *such estate,* or the payee of such income, such cost or such portion thereof as such estate or payee is able to reimburse." (Emphasis added.) Of course, the minor's guardian should obtain the approval of the Probate Court before expending principal for the support of the minor. 2 Locke & Kohn, Conn. Probate Practice § 705. And the Probate Court should limit its approval to expenditures which are reasonably necessary. Ibid. Neither of these safeguards renders the estate "unavailable" to the minor, however, since they are primarily devices to preclude the wasting of the minor's assets by the guardian. We would have been faced with an entirely different situation, of course, if the plaintiff had sought approval of the Probate Court to encroach upon the principal for support and, for some reason not apparent on the record then before us, such approval had been denied.

The plaintiff also argues that the duty of support of a minor for whom the court has appointed a guardian of the estate legally remains with the parents. As an abstract proposition this is quite correct, and it would prevent use of the child's estate for his support if the child had a living parent who reasonably could be expected to provide support. 2 Locke & Kohn, op. cit. § 705. That is not the case here, however, so that funds from the estate may be

used by the guardian for support of the child, although obtaining the prior approval of the Probate Court is advisable. Ibid.

Finally, the plaintiff challenges the constitutionality of the applicable welfare laws on four grounds: (1) They authorize the delegation of legislative power to the commissioner without adequate standards to guide his discretion. (2) They deprived Everett Langs of property without due process of law, in that he was deprived of welfare payments when there was no showing that the property was an "available resource." (3) They constitute a denial of equal protection of the law in that they discriminate against Everett Langs and his family because they are impoverished and establish arbitrary and discriminatory age limitations with respect to an allowable education fund.[2] (4) They contravene the supremacy clause of the Constitution in that they conflict with the letter and spirit of federal welfare laws.

"At the outset, it must be borne in mind that, in testing the constitutionality of an act of the legislature, we are not to assess it in terms of what we think of the wisdom and discernment of the lawmaking body in the particular instance. Rather we are bound to approach the question from the standpoint of upholding the legislation as a valid enactment unless there is no reasonable ground upon which it can be sustained. *Cyphers* v. *Allyn*, 142

---

[2] State Welfare Department Policies, 1 Public Assistance Manual, c. III, index 332.5 (b) allows the earnings of a child of eighteen or more years of age to be reserved, in a savings account, to meet the costs of "a specific plan for continued education," which must be approved by a casework supervisor. The maximum allowable reservation at any given time is $1000.

Conn. 699, 705, 118 A.2d 318; *Lyman* v. *Adorno,* 133 Conn. 511, 514, 52 A.2d 702. The burden of proving unconstitutionality rests on the plaintiff." *Roan* v. *Connecticut Industrial Building Commission,* 150 Conn. 333, 338, 189 A.2d 399. We also should note that the only right curtailed herein is the right to receive benefits conferred by the state, a right which finds its basis not in the Constitution, but in a statute enacted by the legislature. *McClellan* v. *Shapiro,* 315 F. Sup. 484, 491 (D. Conn.).

The plaintiff's claim of unconstitutional vagueness "raises the question whether the statute declares a legislative policy, establishes primary standards for carrying it out, or lays down an intelligible principle to which the commissioner must conform . . . and enjoins a procedure under which, by appeal or otherwise, both public interests and private rights shall have due consideration. *State* v. *Stoddard,* 126 Conn. 623, 628, 13 A.2d 586." *State* v. *Griffiths,* 152 Conn. 48, 57, 203 A.2d 144. Inasmuch as none of the individual sections of the General Statutes cited above contains a specific statement of the public purpose sought to be achieved by it, that element of the test must be gathered from the chapter relating to A.D.C., General Statutes, title 17, c. 302, part II, of which the individual sections form a part.[3] *Roan* v. *Connecticut Industrial Building Commission,* supra, 338–39. The policy thus clearly indicated is to provide a means of support for children dependent on relatives who are unable to furnish suitable support. In providing this aid, "need" has been established as the standard of eligi-

---

[3] Chapter 302 is entitled "Public Assistance" and part II thereof has the subtitle "Aid to Dependent Children" and includes §§ 17-84 through 17-107.

bility, and has been legislatively defined as that financial situation not capable of providing a "reasonable standard of health and decency." §§ 17-82, 17-85. In determining the extent of such aid, the commissioner must take into account *"all . . . available income and support."* (Emphasis added.) § 17-87. The standards thus enumerated are as clearly defined as the complexity of the subject matter permits and, while necessarily broad, do not authorize unbridled discretion or arbitrary action on the commissioner's part. Protection against any possibility of arbitrariness is afforded by provision for an appeal to the courts, as this very action amply has demonstrated. Statutes in far broader terms have successfully met the test of constitutionality enunciated in the leading case of *State* v. *Stoddard,* 126 Conn. 623, 628, 13 A.2d 586; see such cases as *West* v. *Egan,* 142 Conn. 437, 443, 115 A.2d 322; *State* v. *Vachon,* 140 Conn. 478, 482, 101 A.2d 509.

Inasmuch as we have determined that the estate is sufficiently "available" for the commissioner to take it into account, a determination which has been finalized only after a fair hearing procedure which provided for notice, representation by counsel, a transcript of testimony under oath, subpoena power, the right of appeal, and, in this instance, three successive appeals, the plaintiff's claim that she has been denied due process of law must fail as well. See *State* v. *Griffiths,* supra, 57.

The plaintiff contends, in support of her first equal protection argument, that the operation of the Connecticut welfare statutes in allowing the consideration of tort recoveries as "resources" for the purpose of determining eligibility discriminates against those who are impoverished in that those who are

not impoverished are treated only as having been made whole by such recoveries. In reply to this, we only need to repeat the previously cited words of Judge Frankel in *Snell* v. *Wyman,* 281 F. Sup. 853, 862 (S.D. N.Y.), that "the Constitution we are supposed to expound gives us no authority to follow the figurative trails of metaphors like this."

The plaintiff's other equal protection claim is that in limiting the reservation of funds for future identifiable educational needs of welfare recipients to persons over the age of eighteen the welfare regulations, promulgated pursuant to legislative authority, have established an arbitrary distinction discriminating against welfare recipients under the age of eighteen. The provision of the welfare regulations allowing such a reservation of funds is in issue because the plaintiff apparently requested the welfare department to use the entire estate to set up such an educational fund. The test of equal protection is whether "the distinctions . . . bear some rational relationship to a legitimate state end and will be set aside as violative of the Equal Protection Clause only if based on reasons totally unrelated to the pursuit of that goal." *McDonald* v. *Board of Election Commissioners,* 394 U.S. 802, 809, 89 S. Ct. 1404, 22 L. Ed. 2d 739. The very purpose of the provision in question is to allow welfare recipients to reserve funds for future identifiable educational needs. The age limitation obviously is designed to limit the program to those whose educational needs have become identifiable, clearly a rational distinction to be made. At the time of the settlement of the tort claim Everett Langs was four years old; he is now at most ten years old. Any educational needs he may have obviously are highly speculative,

a situation decisively pointing out the rationality of the age distinction made in regard to the educational fund.

The plaintiff's final claim, that the Connecticut welfare statutes and regulations violate the supremacy clause because they conflict with federal law, also is without merit. As we already have pointed out, the federal legislation directs the states to consider all income and resources of the child, with no exclusion of tort recoveries, and thus is perfectly consistent with Connecticut law. The federal regulations which deal with coverage and conditions of eligibility in financial assistance programs, including A.D.C., require each state's plan to: "[P]rovide that, in establishing financial eligibility and the amount of assistance payment: . . . (c) only such net income as is actually available for current use on a regular basis will be considered, and only currently available resources will be considered." 45 C.F.R. § 233.20 (a) (3) (ii) (c). We already have determined that the fund in question is sufficiently a "currently available resource" to be considered, so that we see no conflict between the federal and state regulations.

There is error, the judgment is set aside and the case is remanded with direction to render judgment dismissing the plaintiff's appeal.

In this opinion HOUSE, C. J., SHAPIRO and LOISELLE, Js., concurred.

BOGDANSKI, J. (dissenting). I respectfully dissent.

The principal issue raised by this appeal is whether the welfare commissioner abused his discretion in terminating the support of Everett Langs

on a finding that he was not a "needy child"[1] because he had obtained a personal injury recovery. This award compensated him for past and future medical and rehabilitation expenses, for the diminution of his future earning capacity, and for the pain and suffering resulting from his injury. General Statutes § 52-204; Wright, Connecticut Law of Torts (2d Ed.) § 171 (a). The award was not meant to provide for his daily maintenance. In legal contemplation, Everett Langs' tort recovery merely restored him to his original position. The substitution of money for flesh did not constitute any gain to him.

When a minor child obtains a tort recovery over $5000, the Probate Court is required to appoint a guardian of the estate to assure that the personal injury award is conserved for its proper purposes. General Statutes § 45-49. Ordinarily, the parent-guardian cannot resort to such a fund for the minor's support. 2 Locke & Kohn, Conn. Probate Practice § 705. In this case, the termination of Everett Langs' welfare benefits results in a misallocation of his personal injury award solely because of his mother's poverty.

The definition of "dependent child" in § 17-82 does not warrant this result. A child who is "needy"

---

[1] General Statutes § 17-82 defined the term "dependent child" to mean "a needy child under the age of eighteen, or who is under the age of twenty-one and in full time attendance in secondary school, or technical school or in college, who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle or aunt, or any other relative approved by the commissioner in a place of residence maintained by one or more of such relatives as his or their own home."

Section 17-82 has since been amended in ways not relevant to this appeal.

prior to a tortious injury remains "needy" despite his money damages. If he is deprived of the proper use of his award, his losses then go uncompensated. I cannot accept the construction placed by the majority on § 17-82 because it is contrary to the existing body of law concerning the nature of a "personal injury award." I would, therefore, sustain the plaintiff's appeal.