LORRAINE I. VAN HORN *v.* JACK G. SWEZEY ET AL.

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 1-619-6040

Argued August 5—decided September 16, 1963

*Harold Sobel,* of Bridgeport, for the appellants (defendants).

*Edward E. Garlick,* of Westport, for the plaintiff (appellee).

JACOBS, J. Three principal issues are raised on this appeal: whether the court erred in permitting the plaintiff as the owner of two diamond rings to testify to their value, the denial of the defendants' motion for a mistrial, and claimed error in portions of the charge as given.

Two radically variant and divergent versions of the events and circumstances which befell the plaintiff's diamond rings were given by the witnesses produced at the trial. The plaintiff introduced evidence in support of her claim that she had turned her rings over to the defendant Jack G. Swezey for the purpose of procuring an estimate of the cost of repairing them and that he failed to return them to her. The defendants, on the other hand, presented evidence which, if found true, quite as unmistakably established that the rings in question were returned to the plaintiff at the time she entered the defendants' place of business to obtain the estimate. The decisive question for determination,

therefore, was which of the two versions was the correct one. Its answer involved weighing conflicting evidence and passing on the credibility of witnesses, and thus the determinative issue was brought distinctly and peculiarly within the jury's province.

The jury might reasonably have found from the evidence these facts: The plaintiff was the owner of an engagement ring which had in it a round stone of about two and a half carats of old mine cut and of good color. It was set in platinum with two baguettes on either side. The setting for this ring was purchased by the plaintiff's husband in 1950 at a cost to him of $300. The plaintiff acquired the stone from her husband, who had received it as a gift from his mother. The plaintiff was also the owner of a platinum wedding ring which contained eight small diamond chips around it. Sometime during the latter part of August or early September in 1959, the plaintiff brought these rings to the defendants' store in Westport for the purpose of obtaining an estimate for the replacement of a missing baguette on the engagement ring and also to have the size of both rings reduced. The plaintiff removed the rings from her finger and turned them over to the defendant Swezey. He measured her finger with a ring gauge to arrive at the reduced size and then placed the rings in a brown envelope, noted the reduced size thereon, and placed the envelope with the rings therein on a shelf behind the counter. No work on the rings was to be done until the plaintiff was furnished with an estimate, which was to be made by a firm in New Jersey with whom the defendants had business dealings. No receipt for the rings was given to the plaintiff. In October, 1959, the plaintiff had an occasion to inquire of the defendant Swezey relative to the estimate but was advised that none had as yet been

received. In May, 1960, the plaintiff wrote a note over a billhead of the defendants which she sent to them in connection with the payment of a bill unrelated to the present litigation; the note read: "Hi, What about my rings." Having received no word from the defendants, the plaintiff telephoned Swezey to inquire about her rings. He replied that he did not remember anything about them and thought she was fooling. In August, 1960, Swezey went to the plaintiff's home and offered to replace the missing rings with similar ones at his cost price. The plaintiff rejected this proposal. At that time, he stated that the replacement value of the two rings would be about $2000. A thorough search was made to locate the missing rings, including a search of the Bridgeport store of G. W. Fairchild and Sons, Inc., the former owner of the Westport store which Swezey of Westport, Inc., had purchased, becoming the successor corporation. All efforts to locate the missing rings proved futile. This action for damages resulted. The jury assessed damages against the defendants for $2078.66.

The defendants complain and assign as error the portion of the court's charge relating to the delivery of the rings to the defendant Swezey in that the court failed to define the term "delivery" with sufficient clarity as applied to the facts in the case. On this point, the court charged the jury as follows: "Now, we come to the action, which you have under consideration. The action in question is founded upon what we know as the law of bailment. A bailment is defined as delivery of personalty for some particular purpose under a contract either expressed or implied on condition that after the purpose has been fulfilled, the personalty shall be delivered to the person who delivered it. I am going to read that to you again. [Reread by the court.] Consequently, if you find from the evidence in this

case that the plaintiff, Lorraine Van Horn, delivered the rings in question to the defendant, then there was a bailment relation established between them as a matter of law. Now, on the other hand, [if] you find from the evidence that there was no delivery of these rings to the defendant, then the legal relationship of bailment will not have been established, and under these circumstances, your verdict must be for the defendant."

On the question of the insufficiency of the charge, we start with the premise that the charge is to be considered as a whole. *Lewandowski* v. *Finkel,* 129 Conn. 526, 528. If the language used by the court was presented as an attempt to formulate a broad and comprehensive statement, in the abstract, of the law applicable to all situations, it may very well be open to criticism. But the court was dealing with a concrete factual situation and endeavored to give to the jury intelligent rules in respect to that situation. "[W]here a charge fairly presents the essential issues in a case, error will not be found in a failure to give specific instructions upon some special feature in the absence of request to do so." *Rogoff* v. *Southern New England Contractors Supply Co.,* 129 Conn. 687, 692. In the absence of any request to charge, the charge was sufficiently adequate for the guidance of the jury. See *State* v. *Swift,* 125 Conn. 399, 404.

The defendants also assign error in the denial of their motion for a mistrial. During the course of the trial, Peter Van Horn, the plaintiff's husband, was called as a witness in her behalf. On direct examination, he testified to having a telephone conversation with Swezey a short time after the conference held at the Van Horn home. The examination continued: "Q.—What did you talk with him about at that time? A.—I talked to him whether or

not he checked with his insurance agent." The defendants promptly moved for a mistrial because of the reference to insurance. The motion was denied. The court instructed the jury "to disregard and to erase absolutely from your minds any reference that was made to the word 'insurance' because that plays no part in your determination of the issues in this case." "The record does not indicate any prejudicial effect from this reference to the insurance . . . [agent], and in view of the court's caution to the jury in the charge not to regard any mention of . . . [insurance] as being material to the issues in the case, we could not find such prejudice without holding that the jury disregarded the caution and thus failed in their duty." *Antel* v. *Poli,* 100 Conn. 64, 75; *Mongillo* v. *New England Banana Co.,* 115 Conn. 112, 115; *Weimer* v. *Brock-Hall Dairy Co.,* 131 Conn. 361, 367; note, 56 A.L.R. 1418, 1548.

It is finally argued that the court erred in permitting the plaintiff to give her estimate of the value of her diamond rings. "The *owner of an article,* whether he is generally familiar with such values or not, ought certainly to be allowed to estimate its worth; the weight of his testimony (which often would be trifling) may be left to the jury; and Courts have usually made no objections to this policy." 3 Wigmore, Evidence (3d Ed.) § 716; 20 Am. Jur., Evidence, § 892; 32 C.J.S. 288, Evidence, § 545; see *Saporiti* v. *Austin A. Chambers Co.,* 134 Conn. 476, 479. "The authorities show a divergence of view on the question of the admissibility of the opinion as to the value of jewelry of a nonexpert owner." Note, 37 A.L.R.2d 967, 1033. "The prevailing rule is that the owner of an article, whether or not he is generally familiar with the value of like articles, may testify as to his estimate of the value of his own property. Ownership, coupled with

familiarity with the quality and condition of the article, is considered sufficient qualification for his testimony. Lack of general knowledge goes to the weight of the testimony and not to its competency." *Manning* v. *Lamb,* 89 A.2d 882, 884 (D.C. Munic. Ct. App.); see *Rankin* v. *Caldwell,* 15 Idaho 625 (owner permitted to testify to the value of his two diamond rings); *Pavloff* v. *Clairton,* 146 Pa. Super. 158 (owner entitled to give his opinion of the value of several articles of jewelry); *Glennon* v. *Travelers Indemnity Co.,* 91 A.2d 210 (D.C. Munic. Ct. App.) (ownership of diamond ring entitled plaintiff to give her estimate of value); *Graham* v. *Cohen,* 111 Cal. App. 131 (owner of diamonds entitled to testify as to their worth); *Gibbons* v. *Chicago B. & Q.R. Co.,* 98 Neb. 696 (owner's value of her lost diamonds must be received); see also *Pettit* v. *Kilby,* 232 Ark. 993; cf. *Motton* v. *Smith,* 27 R.I. 57, rehearing denied, 27 R.I. 62; *Gregory* v. *Fichtner,* 14 N.Y.S. 891. The defendants' exception to the admission of the plaintiff's testimony as to the value of her diamond rings cannot be sustained.

There is no error.

In this opinion Pruyn and Dearington, Js., concurred.