GILBERT D. CLAVETTE ET AL. *v.* ELIZABETH M. KAMINSKY

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 12-6706-9853

Argued March 9—decided May 22, 1970

*Joseph F. Keefe,* of Hartford, for the appellant (defendant).

*Francis J. McCarthy,* with whom was *Jerome P. Malliet,* both of Hartford, for the appellees (plaintiffs).

KOSICKI, J.   This is a negligence action arising out of a rear-end collision in which the defendant's car struck the automobile of the plaintiffs while it was stopped on a highway in obedience to a traffic stoplight.

The plaintiffs offered evidence to prove and claimed to have proved the following facts.   On July 4, 1966, the plaintiff Gilbert, with his wife, the plaintiff Mae, was driving a 1966 Pontiac sedan in a northerly direction on route 15 toward Hartford. Route 15 is known as the Berlin Turnpike and runs through the town of Berlin.   It is a four-lane highway with two concrete lanes headed north, two parallel lanes running south, and an esplanade between the northbound and southbound lanes.   The Clavette vehicle had stopped in the left northbound lane for a red traffic light at the intersection of Old Colony Road in Berlin.   The traffic light was a state traffic control signal changing successively to red, amber and green.   The plaintiffs' vehicle was stopped behind two cars while the traffic light was red.   When the light turned green, Gilbert took his foot off the brake, and, before he could place it on the accelerator, his car was struck violently in the rear by a motor vehicle operated by the defendant. The weather was clear.   The collision occurred at about 11 o'clock at night.   The Berlin Turnpike at

this intersection is straight and level. Just before the collision, the defendant had been traveling at a speed of between forty and forty-five miles an hour. She did not stop, decelerate her speed, or give any signal when she saw the plaintiffs' car. She had expected, on her approach while the light was red, that the plaintiffs' vehicle would start as soon as the light changed to green. When she realized her miscalculation, she "panicked and stepped on the gas pedal instead of the brake." At that time she was about three car lengths from the plaintiffs' vehicle. In the defendant's own words, she was "unable to stop in time to avoid a collision." The impact was so severe that both vehicles were demolished and burst into roaring flames. To Gilbert, the impact produced a loud, dull noise, and the blow was so severe as to lift him out of his seat and literally out of his shoes. To his wife, the collision was terrifying and of such great force as to push the back of the car into the rear of the front seats. Investigating officers, from their observations of the condition of the cars and the debris resulting from the collision, concluded that the force of impact was "tremendous." Immediately after the crash both cars went up in flames and the tank of the plaintiffs' automobile exploded. Both cars, with their contents, were wholly destroyed despite the efforts of the Berlin and Meriden fire departments to save them.

The defendant offered evidence to prove and claimed to have proved the following: After the collision, the Clavette vehicle was not pushed through the intersection. As the defendant approached the intersection, the traffic light changed from red to green. The defendant did not stop her car because of this light change; she thought that the plaintiffs' vehicle was going to start. She then realized that the plaintiffs' car had not started into the intersection.

In her assignments of error the defendant directs her challenge toward certain instructions to the jury, the admission of certain evidence, and the denial of the motion to set aside the verdict in favor of the plaintiffs on the ground that the damages awarded were excessive.

We need not discuss in detail the question of liability, for obviously the jury, if they credited the evidence presented by the plaintiffs, as reviewed above, could justly arrive at the conclusion that the defendant was liable on both counts of the complaint. The question of liability is not seriously contested, for the claimed errors nowhere raise that issue.

The first assignment is without merit. It attacks the court's charge as to the allegation and proof of speed of the defendant's car as being a circumstance bearing on the defendant's negligence in causing the accident. In its charge, the court instructed the jury that the operator of a motor vehicle on a public highway is under a duty to operate it at a speed which is proper and reasonable in view of the situation confronting him. The court further charged that the test with reference to speed is the speed at which a reasonably prudent person would operate under similar conditions, having regard to the width of the road, the traffic, the use of the highway, the intersection of streets, and the weather conditions.

The charge was unexceptionable. It was in accord with the portion of General Statutes § 14-219 (a) which does not require any clocked measurement of speed to constitute prima facie evidence of speed in excess of the maximum limits. The remark of the court to defense counsel that the charge as to speed related to common law rather than statutory negligence was not prejudicial or harmful. If any-

thing, it was more favorable to the defendant than she was entitled to, considering her own testimony as to speed, as noted in the foregoing recital of facts. " 'A charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case.' *Amato* v. *Desenti*, 117 Conn. 612, 617 . . . ." *Farlow* v. *Connecticut Co.*, 147 Conn. 644, 648.

The defendant next claims error in the court's charge concerning the claimed violation of the statute pertaining to traffic control signals. General Statutes § 14-299. It was the defendant's own testimony that as she approached the plaintiffs' automobile, which was stopped at the traffic signal, the light was red, and that she did not decrease her speed, until it was too late for her to avoid the rear-end collision, because she expected the plaintiffs' car to start immediately on the change to green. "[W]hen the traffic light turned green . . . it was her duty to operate her car cautiously, to be reasonably vigilant and to maintain a proper lookout. *Whipple* v. *Fardig*, 112 Conn. 402, 403 . . . . When the light changed to green, she was required to act as would a reasonably prudent person with the knowledge that she had the green light in her favor and that she could not proceed in disregard of the presence of other vehicles in the intersection." *Gorman* v. *American Sumatra Tobacco Corporation*, 146 Conn. 383, 386; see such cases as *Gutshall* v. *Wood*, 123 F.2d 174; *Kocour* v. *Mills*, 23 Ill. App. 2d 305, 307–10; *Friedburg* v. *P. & H. Service Station, Inc.*, 13 App. Div. 2d 503 (N.Y.); *Lamar & Smith* v. *Stroud*, 5 S.W.2d 824 (Tex. Civ. App.). In all of these cases, involving traffic light violations and rear-end or intersection collisions, it was held that the negligence causing the collision was a matter of law.

The third assignment of error is the admission in evidence of the plaintiffs' exhibit, prepared by the plaintiff Mae, of a list of articles of personal property and their estimated values, these articles having been lost in the conflagration of the plaintiffs' car. The values were based on a knowledge of the lost articles, their condition, the prices originally paid for them, and the estimated values at the time of loss. It is asserted by the defendant that evidence of value could be testified to only by an expert familiar with the market value of the articles before they were destroyed. Therefore, the defendant contends, since neither plaintiff claimed to possess knowledge of the market value of the property in question, the exhibit should have been excluded and the jury instructed to remove from their consideration any declarations as to the value placed on the property by its owners.

Such a rule of law is not applicable in the present situation. If it were, it would incongruously result in placing the defendant in a position to profit by her own wrong. But we do not rest our decision on this manifest truism. "[The property] was not available, and indirect evidence of value was all that could be offered. In determining that value, the original cost of . . . [the property], the way in which its use had affected it, and the increased cost of buying new . . . [replacements] might properly be considered . . . . Testimony of the plaintiff as to the value . . . was proper, although no qualification other than . . . ownership . . . was shown." *Saporiti* v. *Austin A. Chambers Co.,* 134 Conn. 476, 479; see *Root* v. *Kakadelis,* 3 Conn. Cir. Ct. 283, 287, and cases therein cited. The owner of an article may testify as to his estimate of its worth, whether or not he is generally familiar with the value of such articles. The weight of his testimony may be left to the jury. 3 Wigmore, Evidence (3d Ed.) § 716;

see *Van Horn* v. *Swezey,* 2 Conn. Cir. Ct. 422, 427. The evidence of value, in this case, was properly admitted.

The remaining claim of error is that the verdicts should have been set aside because they were excessive. The sole basis of the defendant's claim is that, considering the expenses for medical treatment of $133 in the case of Mae Clavette and of $96 for Gilbert Clavette, the respective verdicts of $4000 and $5500 were too large. In substance, it is argued by use of some multiplying coefficient, not disclosed in evidence, that the verdicts are so many times larger than the special damages proved that they are excessive as a matter of law. With this postulate we cannot agree. "The jurors, in assessing damages for personal injuries, could well have considered the circumstances following the collision, in which the . . . [plaintiffs'] car was completely . . . demolished . . . ; the resulting shock and trauma to the . . . [plaintiffs] and the actual physical pain and suffering endured by . . . [them] over a period . . . [of many months]. For us to determine that the verdict, under the circumstances, was excessive, we would have to decide whether the amount of the award so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice or mistake. . . . The damages awarded to the . . . [plaintiffs] were clearly not excessive in view of the evidence offered." *Kricker* v. *Taylor Bros., Inc.,* 4 Conn. Cir. Ct. 215, 218–19. "Our primary concern in reviewing the action of the trial court on a motion to set aside a verdict is to determine whether the court abused its discretion. *McWilliams* v. *American Fidelity Co.,* 140 Conn. 572, 575 . . . . Litigants have a constitutional right to have issues of fact determined by the jury. *Ardoline* v. *Keegan,* 140 Conn. 552, 555 . . . . The credibility of witnesses and the weight to be ac-

corded to their testimony lie within the province of the jury. We cannot retry the case. *Henry* v. *Bacon,* 143 Conn. 648, 651 . . . ." *Desmarais* v. *Pinto,* 147 Conn. 109, 110. "When the decision of the trial court concurs with that of the jury, the verdict should not be disturbed unless its manifest injustice is so plain as to justify the belief that the jury were influenced by ignorance, prejudice, corruption or partiality. *Lopez* v. *Price,* 145 Conn. 560, 564 . . . . Since the jury could reasonably reach the conclusion they did, the verdict must stand. *Feir* v. *Hartford,* 141 Conn. 459, 463 . . . ." *Desmarais* v. *Pinto,* supra, 112.

There is no error.

In this opinion CASALE and JACOBS, Js., concurred.